UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-425 |
| ) | |
| STATE OF NORTH CAROLINA; PATRICK ) | |
| MCCRORY, in his official capacity as ) | |
| Governor of North Carolina; NORTH ) | |
| CAROLINA DEPARTMENT OF PUBLIC ) | |
| SAFETY; UNIVERSITY OF NORTH ) | |
| CAROLINA; and BOARD OF GOVERNORS ) | |
| OF THE UNIVERSITY OF NORTH ) | |
| CAROLINA, ) | |
| ) | |
| Defendants. ) | |

# COMPLAINT

## PRELIMINARY STATEMENT

1. The United States files this complaint challenging a provision of North Carolina law requiring public agencies to deny transgender persons access to multiple-occupancy bathrooms and changing facilities consistent with their gender identity.

2. As set forth below, Defendants' compliance with and implementation of Part I of North Carolina Session Law 2016-3, House Bill 2 ("H.B. 2"), which was enacted and became effective on March 23, 2016, constitutes a pattern or practice of employment discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); discrimination on the basis of sex in an education program receiving federal funds in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"), and its implementing regulations, 28 C.F.R. Part 54 (2000), 34 C.F.R. Part 106 (2010); and discrimination on the basis of sex and gender identity in programs

1

receiving federal funds in violation of the Violence Against Women Reauthorization Act of 2013 ("VAWA"), 42 U.S.C. § 13925(b)(13).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-6 and 28 U.S.C. §§ 1331, 1343(a), and 1345.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants are located within the Middle District of North Carolina and because a substantial part of the acts or omissions giving rise to this complaint arose from events occurring within this judicial district.

5. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. §§ 2000e-6(a) and (b); 20 U.S.C. § 1682; and 42 U.S.C. §§ 13925(b)(13)(C) and 3789d(c)(3).

## DEFENDANTS

6. Defendant State of North Carolina is a person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b).

7. Defendant Patrick McCrory is the Governor of North Carolina. Pursuant to Article III, Section 1 of the North Carolina Constitution, "the executive power of the State" is vested in Defendant McCrory in his capacity as Governor. Article III, Section 5(4) also provides that it is the duty of Defendant McCrory in his capacity as Governor to "take care that the laws be faithfully executed." Defendant McCrory is a person within the meaning of 42 U.S.C. § 2000e(a).

8. Defendant North Carolina Department of Public Safety is an agency of the State of North Carolina responsible for public safety, corrections and emergency management. It is a

person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b). It is currently and, at all times relevant to the Complaint, has been a recipient of federal funds from the Department of Justice's Office on Violence Against Women, with open grants dated after the reauthorization of VAWA on March 19, 2013. As a condition of receiving federal funds, Defendant North Carolina Department of Public Safety signed contract assurances agreeing that it will not discriminate in violation of federal law.

9. Defendant University of North Carolina is a public, multi-campus university that is organized under, and exists pursuant to, the laws of the State of North Carolina. It is a person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b). It is currently and, at all times relevant to the Complaint, has been a recipient of federal funds from the United States Department of Justice, including the Office on Violence Against Women, with open grants dated after the reauthorization of VAWA on March 19, 2013. As a condition of receiving federal funds, Defendant University of North Carolina signed contract assurances agreeing that it will not discriminate in violation of federal law.

10. Defendant Board of Governors of the University of North Carolina is the corporate body charged with the general control, supervision, and governance of the University of North Carolina and is capable under North Carolina law of suing and being sued in any court.

## FACTUAL ALLEGATIONS

### Enactment of H.B. 2

11. On March 23, 2016, the North Carolina legislature convened a special session for the purpose of passing H.B. 2.

12. H.B. 2 mandates, *inter alia*, that all "[p]ublic agencies . . . require multiple occupancy bathrooms or changing facilities . . . be designated for and only used by individuals based on their biological sex." H.B. 2 defines "biological sex" as "[t]he physical condition of being male or female, which is stated on a person's birth certificate." H.B. 2 further defines "public agencies" to include, among other entities, the state executive, judicial and legislative branches, including the University of North Carolina system.

13. H.B. 2 was enacted in direct response to Ordinance 7056 passed by the City Council in Charlotte, North Carolina (the "Charlotte Ordinance"), which permitted transgender individuals to use facilities corresponding to their gender identity by prohibiting discrimination based on "gender identity" in places of public accommodation.

14. Governor McCrory and North Carolina legislators made explicit public statements indicating that they proposed, passed, and signed H.B. 2 to overturn the Charlotte Ordinance and to ensure transgender individuals would not be permitted to access bathrooms and other facilities consistent with their gender identity in schools and other public agencies.

15. Prior to the passage of the Charlotte Ordinance in February 2016, Governor McCrory told members of the Charlotte City Council that the Ordinance could "create major public safety issues by putting citizens in possible danger from deviant actions by individuals taking improper advantage of a bad policy." Governor McCrory went on to explain that the "action of allowing a person with male anatomy, for example, to use a female restroom or locker room will most likely cause immediate State legislative intervention which I would support as governor."

16. When State Representative Dan Bishop introduced H.B. 2, he stated that "[a] small group of far-out progressives should not presume to decide for us all that a cross-dresser's

liberty to express his gender nonconformity trumps the right of women and girls to peace of mind."

17. The bill passed both houses on March 23, 2016—the same day it was introduced. Governor McCrory signed the bill that night. H.B. 2 took effect immediately.

18. Following the conclusion of the special session, Senate President Phil Berger stated on his website, "[t]he North Carolina Senate voted unanimously Wednesday [March 23, 2016] to stop a radical and illegal Charlotte City Council ordinance allowing men into public bathrooms and locker rooms with young girls and women." Senator Berger characterized the Charlotte Ordinance as "dangerous" and claimed that it "created a loophole that any man with nefarious motives could use to prey on women and young children."

19. Lieutenant Governor Dan Forest stated that the Charlotte Ordinance "would have given pedophiles, sex offenders, and perverts free rein to watch women, boys, and girls undress and use the bathroom."

**Defendants' Compliance with and Implementation of H.B. 2 and the United States' Response**

20. On April 5, 2016, following the enactment of H.B. 2, Defendant University of North Carolina's President, Margaret Spellings, issued a Memorandum to all Chancellors in the University of North Carolina system, titled "Guidance – Compliance with the Public Facilities Privacy & Security Act." The Memorandum directed Chancellors that "University institutions must require every multiple-occupancy bathroom and changing facility to be designated for and used only by persons based on their biological sex."

21. As a federal funding agency, when the Department of Justice has reason to question a funding recipient's compliance with Title IX, it gives notice of non-compliance and attempts to secure the recipient's compliance through voluntary means.

22. On April 8, 2016, the United States sent a letter to President Spellings seeking information to determine whether the University was complying with federal law.

23. In a response dated April 13, 2016, President Spellings affirmed that "the University is specifically covered by H.B. 2 and is required as a public agency to comply with its applicable portions, including the provisions related to multiple-occupancy bathrooms and changing facilities."

24. On April 12, 2016, Governor McCrory issued Executive Order 93, implementing H.B. 2 and affirming that "every multiple occupancy restroom, locker room or shower facility located in a cabinet agency must be designated for and only used by persons based on their biological sex."

25. Access to bathrooms and changing facilities on the University of North Carolina campus are covered by the non-discrimination mandates of Title IX and VAWA.

26. Access to bathrooms and changing facilities operated by Defendant North Carolina Department of Public Safety and its sub-recipients are covered by the non-discrimination mandate of VAWA.

27. Access to bathrooms and changing facilities in the workplace at public agencies in the State of North Carolina is a term, condition and privilege of employment and, therefore, is covered by the non-discrimination mandate of Title VII.

28. In letters dated May 4, 2016, the United States notified all Defendants, including the University of North Carolina, that the United States had determined they were not in compliance with Title VII, Title IX, and/or VAWA, based on their compliance with and implementation of provisions of H.B. 2 that are irreconcilable with federal law. The United States requested that Defendants immediately agree not to comply with those provisions of H.B.

2, ensure that transgender persons were entitled to use multiple-occupancy bathrooms and changing facilities consistent with their gender identity as required by federal law, and retract any statements to the contrary. The United States advised Defendants that it would take enforcement action under the above statutes if such compliance with federal law was not demonstrated.

29. As of the filing of this Complaint, no Defendant has taken steps to achieve that compliance.

## Gender Identity and Its Relationship to Sex

30. Individuals are typically assigned a sex on their birth certificate solely on the basis of the appearance of the external genitalia at birth. Additional aspects of sex (for example, chromosomal makeup) typically are not assessed and considered at the time of birth, except in cases of infants born with ambiguous genitalia.

31. An individual's "sex" consists of multiple factors, which may not always be in alignment. Among those factors are hormones, external genitalia, internal reproductive organs, chromosomes, and gender identity, which is an individual's internal sense of being male or female.

32. For individuals who have aspects of their sex that are not in alignment, the person's gender identity is the primary factor in terms of establishing that person's sex. External genitalia are, therefore, but one component of sex and not always determinative of a person's sex.

33. Although there is not yet one definitive explanation for what determines gender identity, biological factors, most notably sexual differentiation in the brain, have a role in gender identity development.

34. Transgender individuals are individuals who have a gender identity that does not match the sex they were assigned at birth. A transgender man's sex is male and a transgender woman's sex is female.

35. A transgender individual may begin to assert a gender identity inconsistent with their sex assigned at birth at any time from early childhood through adulthood. The decision by transgender individuals to assert their gender identity publicly is a deeply personal one that is made by the individual, often in consultation with family, medical and health care providers, and others.

36. Gender identity is innate and external efforts to change a person's gender identity can be harmful to a person's health and well-being.

37. Gender identity and transgender status are inextricably linked to one's sex and are sex-related characteristics.

38. Most states authorize changing the sex marker on one's birth certificate, but the requirements for doing so vary and are often onerous. Specifically, many states require surgical procedures. At least one state does not allow persons to change the sex marker on their birth certificates.

39. Individuals born in North Carolina must have proof of certain surgeries, such as "sex reassignment surgery," in order to change the sex marker on their birth certificates. N.C. Gen. Stat. § 130A-118(b)(4).

40. Surgery related to gender transitioning is generally unavailable to children under age 18.

41. In addition, the great majority of transgender individuals do not have surgery as part of their gender transition. Determinations about such surgery are decisions about medical

-8-

Case 1:16-cv-00425-TDS-JEP    Document 2    Filed 05/10/16    Page 8 of 14

care made by physicians and patients on an individual basis. For some, health-related conditions or other medical criteria counsel against invasive surgery. For others, the high cost of surgical procedures, which are often excluded from health insurance coverage, present an insurmountable barrier.

42. Standards of medical care for surgery related to gender transitioning generally advise that transgender individuals present consistent with their gender identity on a day-to-day basis across all settings of life, including in bathrooms and changing facilities at school and at work, for a significant time period prior to undergoing surgery.

### Impact of H.B. 2 on Transgender Individuals in North Carolina

43. H.B. 2 requires public agencies to follow a facially discriminatory policy of treating transgender individuals, whose gender identity may not match their birth certificates, differently from similarly situated non-transgender individuals.

44. Because of Defendants' compliance with and implementation of H.B. 2, non-transgender employees of Defendants and of other public agencies in North Carolina may access bathrooms and changing facilities that are consistent with their gender identity in their places of work, while transgender employees may not access bathrooms and changing facilities that are consistent with their gender identity.

45. Defendants' compliance with and implementation of H.B. 2 stigmatizes and singles out transgender employees, results in their isolation and exclusion, and perpetuates a sense that they are not worthy of equal treatment and respect.

46. Upon information and belief, transgender employees of Defendants and other public agencies in North Carolina have suffered and continue to suffer injury, including, without

limitation, emotional harm, mental anguish, distress, humiliation, and indignity as a direct and proximate result of Defendants' compliance with and implementation of H.B. 2.

47. Because of the compliance with and implementation of H.B. 2 by Defendants University of North Carolina and Board of Governors of the University of North Carolina, individuals who are not transgender may access campus bathrooms and changing facilities that are consistent with their gender identity, while individuals who are transgender may not access campus bathrooms and changing facilities that are consistent with their gender identity.

48. The compliance with and implementation of H.B. 2 by Defendants University of North Carolina and Board of Governors of the University of North Carolina stigmatizes and singles out transgender individuals, results in their isolation and exclusion, and perpetuates a sense that they are not worthy of equal treatment and respect.

49. Upon information and belief, transgender individuals seeking access to the University of North Carolina campus have suffered and continue to suffer injury, including, without limitation, emotional harm, mental anguish, distress, humiliation, and indignity as a direct and proximate result of compliance with and implementation of H.B. 2.

50. Because of the compliance with and implementation of H.B. 2 by Defendants North Carolina Department of Public Safety, University of North Carolina, and Board of Governors of the University of North Carolina, individuals who are not transgender may access bathrooms and changing facilities that are consistent with their gender identity in covered facilities, while individuals who are transgender may not access bathrooms and changing facilities that are consistent with their gender identity.

51. The compliance with and implementation of H.B. 2 by Defendants North Carolina Department of Public Safety, University of North Carolina, and Board of Governors of the

University of North Carolina stigmatizes and singles out transgender individuals seeking access to covered facilities, results in their isolation and exclusion, and perpetuates a sense that they are not worthy of equal treatment and respect.

52. Upon information and belief, transgender individuals seeking access to covered facilities have suffered and continue to suffer injury, including, without limitation, emotional harm, mental anguish, distress, humiliation, and indignity as a direct and proximate result of compliance with and implementation of H.B. 2.

## CLAIMS FOR RELIEF

### COUNT I

Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
42 U.S.C. § 2000e, *et seq.*
(Against All Defendants)

53. As alleged in this Complaint, Defendants State of North Carolina, North Carolina Department of Public Safety, University of North Carolina, and Board of Governors of the University of North Carolina are engaged in, and continue to engage in, a pattern or practice of sex discrimination in the terms, conditions, and privileges of employment against their transgender employees in violation Title VII.

54. As alleged in this Complaint, Defendants State of North Carolina and Governor McCrory have engaged in a pattern or practice of resistance to the full enjoyment of employment rights under Title VII by implementing and requiring compliance with policies and practices that require public agencies to discriminate against their transgender employees based on sex in the terms, conditions, and privileges of employment in violation of Title VII.

## COUNT II

Violation of Title IX of the Education Act Amendments of 1972 ("Title IX")
20 U.S.C. § 1681, *et seq.*
(Against Defendants University of North Carolina and Board of Governors of the University of North Carolina)

55. As alleged in this Complaint, Defendants University of North Carolina and Board of Governors of the University of North Carolina are discriminating on the basis of sex in violation of Title IX.

## COUNT III

Violation of the Violence Against Women Reauthorization Act of 2013 ("VAWA")
42 U.S.C. § 13925(b)(13)
(Against Defendants North Carolina Department of Public Safety, University of North Carolina, and Board of Governors of the University of North Carolina)

56. As alleged in this Complaint, Defendants North Carolina Department of Public Safety, University of North Carolina, and Board of Governors of the University of North Carolina are discriminating on the basis of sex and gender identity, in violation of VAWA.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that this Court:

A. Declare that, by complying with and implementing H.B. 2's provisions that apply to multiple-occupancy bathrooms or changing facilities, Defendants discriminate on the basis of sex in violation of Title VII;

B. Declare that, by complying with and implementing H.B. 2's provisions that apply to multiple-occupancy bathrooms or changing facilities, Defendants University of North Carolina and Board of Governors of the University of North Carolina discriminate on the basis of sex in violation of Title IX;

C. Declare that, by complying with and implementing H.B. 2's provisions that apply to multiple-occupancy bathrooms or changing facilities, Defendants North Carolina Department of Public Safety, University of North Carolina, and Board of Governors of the University of North Carolina discriminate on the basis of sex and gender identity in violation of VAWA;

D. Issue a preliminary and permanent injunction to prevent further violations of federal law; and

E. Grant such additional relief as the needs of justice may require.

Dated: May 9, 2016

Respectfully submitted,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division
United States Department of Justice

BY:

| | |
|---|---|
| Delora L. Kennebrew<br>Chief<br>Employment Litigation Section<br>Civil Rights Division<br>United States Department of Justice | Shaheena A. Simons<br>Chief<br>Educational Opportunities Section<br>Civil Rights Division<br>United States Department of Justice |
| /s/ Corey Stoughton<br>Corey Stoughton NY Bar Number: 4152633<br>Attorney for Plaintiff<br>Senior Counsel<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>MJB, Room 5642<br>Washington, DC  20530<br>Telephone: (202) 616-2124<br>E-mail: corey.stoughton@usdoj.gov | /s/ Ripley Rand<br>Ripley Rand NC Bar Number: 22275<br>Attorney for Plaintiff<br>United States Attorney<br>Middle District of North Carolina<br>United States Department of Justice<br>101 South Edgeworth Street, 4th Floor<br>Greensboro, NC 27401<br>Telephone: (336) 333-5351<br>E-mail: ripley.rand@usdoj.gov |
| /s/ Lori Kisch<br>Lori B. Kisch DC Bar Number: 491282<br>Attorney for Plaintiff | /s/ Whitney M. Pellegrino<br>Whitney M. Pellegrino DC Bar Number: 490972<br>Attorney for Plaintiff |

-13-

| | |
|---|---|
| Special Litigation Counsel<br>Employment Litigation Section<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>PHB Room 4605<br>Washington, DC  20530<br>Telephone: (202) 305-4422<br>E-mail: lori.kisch@usdoj.gov | Special Legal Counsel<br>Educational Opportunities Section<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>PHB Room 4004<br>Washington, DC 20530<br>Telephone: (202) 514-4092<br>E-mail: whitney.pellegrino@usdoj.gov |
| /s/ Candyce Phoenix<br>Candyce Phoenix VA Bar Number: 80800<br>Attorney for Plaintiff<br>Senior Trial Attorney<br>Employment Litigation Section<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>PHB, Room 4031<br>Washington, DC  20530<br>Telephone: (202) 616-3871<br>E-mail: candyce.phoenix@usdoj.gov | /s/ Torey B. Cummings<br>Torey B. Cummings MA Bar Number: 664549<br>Attorney for Plaintiff<br>Senior Trial Attorney<br>Educational Opportunities Section<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>PHB, Room 4112<br>Washington, DC 20530<br>Telephone: (202) 514-4092<br>E-mail: torey.cummings@usdoj.gov |
| Sean Keveney TX Bar Number: 24033863<br>Attorney for Plaintiff<br>Trial Attorney<br>Housing and Civil Enforcement<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>NWB, Room 7010<br>Washington, DC  20530<br>Telephone: (202) 514-4838<br>E-mail: sean.keveney@usdoj.gov | /s/ Dwayne J. Bensing<br>Dwayne J. Bensing DC Bar Number: 1012138<br>Attorney for Plaintiff<br>Trial Attorney<br>Educational Opportunities Section<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>PHB, Room 4015<br>Washington, DC 20530<br>Telephone: (202) 616-2679<br>E-mail: dwayne.bensing@usdoj.gov |

ATTORNEYS FOR THE UNITED STATES OF AMERICA