**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF NORTH CAROLINA; PATRICK MCCRORY, in his official capacity as Governor of North Carolina; NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY; UNIVERSITY OF NORTH CAROLINA; and BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, <br><br> Defendants. | Case No. 1:16-cv-00425-TDS-JEP |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE BY THE HON. PHIL BERGER, PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE, AND THE HON. TIM MOORE, SPEAKER OF THE NORTH CAROLINA HOUSE OF REPRESENTATIVES**

By: /s/ S. Kyle Duncan
S. KYLE DUNCAN* (DC Bar #1010452)
  *Lead Counsel*
GENE C. SCHAERR* (DC Bar #416638)
SCHAERR | DUNCAN LLP
1717 K Street NW, Suite 900
Washington, DC 20006
202-714-9492
571-730-4429 (fax)
kduncan@schaerr-duncan.com
gschaerr@schaerr-duncan.com
*Specially Appearing Pursuant to Local Civil Rule 83.1(d)*

By: /s/ Robert D. Potter, Jr.
ROBERT D. POTTER, JR. (NC Bar #17553)
ATTORNEY AT LAW
2820 Selwyn Avenue, #840
Charlotte, NC 28209
704-552-7742
rdpotter@rdpotterlaw.com

*Attorneys for Proposed Intervenors*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION AND SUMMARY ........................................................................... 1

BACKGROUND ............................................................................................................ 3

ARGUMENT ................................................................................................................. 5

    I.    The Court should grant permissive intervention under Rule 24(b), to ensure that the Act receives the strongest possible defense. ............................................... 5

        A.    The General Assembly's leaders have claims and defenses that share multiple common questions of law and fact with the Department's action. ................................................................................................................... 6

        B.    This intervention is timely and will not delay the case's resolution or prejudice the original parties. ............................................................................. 8

        C.    Unlike the parties sued by the Department, the General Assembly's leaders have general oversight of the Act as it applies to all functions of North Carolina government, including prisons, universities, and local schools—and the Legislative Branch itself. ........................................................ 9

    II.    Alternatively, Senator Berger and Speaker Moore have a right to intervene under Rule 24(a)(2). ............................................................................................. 14

        A.    The motion to intervene is timely. ..................................................................... 14

        B.    Proposed Intervenors have a significantly protectable interest in the Department's action. .......................................................................................... 15

        C.    Disposition of the main action may impair or impede the Proposed Intervenors' ability to protect their interests in defending the Act. .................. 17

        D.    Because the parties sued by the Department have only limited authority under state law, they may not be in a position to fully defend the Act across all state functions. ................................................................................. 17

CONCLUSION ............................................................................................................. 20

## APPENDIX

Complaint for Declaratory Judgment, *Berger et al. v. United States Dep't of Justice*, No. 5:16-cv-00240 (E.D.N.C. May 9, 2016) ................................................................ A

## TABLE OF AUTHORITIES

**Cases**

*Alt v. United States EPA*,
758 F.3d 588 (4th Cir. 2014) ........................................................................ 8

*Bragg v. Robertson*,
183 F.R.D. 494 (S.D. W. Va. 1998) ............................................................ 19

*Briggs & Stratton Corp. v. Concrete Sales & Servs.*,
166 F.R.D. 43 (M.D. Ga. 1996) .................................................................... 8

*CVLR Performance Horses, Inc. v. Wynne*,
No. 6:11-cv-00035, 2013 WL 6409894, (W.D. Va. Dec. 9, 2013),
*aff'd*, 792 F.3d 469 (4th Cir. 2015). .............................................................. 8

*Donaldson v. United States*,
400 U.S. 517 (1971) .................................................................................... 14

*Feller v. Brock*,
802 F.2d 722 (4th Cir. 1986) ................................................................ 5, 14

*Felman Prod. v. Indus. Risk Insurers*,
2009 U.S. Dist. LEXIS 117672 (S.D. W.Va. Dec. 16, 2009) ...................... 18

*Fisher-Borne v. Smith*,
14 F.Supp.3d 699 (M.D.N.C. 2014) .......................................... 3, 13, 14, 15

*Hill v. Western Elec. Co.*,
672 F.2d 381 (4th Cir. 1982) ........................................................................ 5

*Hollingsworth v. Perry*,
133 S.Ct. 2652 (2013) ............................................................................ 9, 10

*Hughey v. Cloninger*,
253 S.E.2d 898 (N.C. 1979) ........................................................................ 12

*In re Sierra Club*,
945 F.2d 776 (4th Cir. 1991) ...................................................................... 18

*JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*,
321 F. App'x 286 (4th Cir. 2009) ......................................................... 17, 18

*Kings Mt. Bd. of Educ. v. N.C. State Bd. of Educ.*,
583 S.E.2d 629 (N.C. App. 2003) .............................................................. 12

*Leandro v. State*,
    488 S.E.2d 249 (N.C. 1997) ................................................................. 12

*Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*,
    2016 U.S. Dist. LEXIS 16610 (E.D. Va. Feb. 9, 2016) ............................ 18

*Liner v. DiCresce*,
    905 F. Supp. 280 (M.D.N.C. 1994) ......................................................... 8

*Marshall v. Meadows*,
    921 F. Supp. 1490 (E.D. Va. 1996) ......................................................... 9

*Moore v. Board of Education*,
    193 S.E. 732 (N.C. 1937) ...................................................................... 11

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) ................................................................. 5

*Ohio Valley Envtl. Coalition, Inc. v. McCarthy*,
    313 F.R.D. 10 (S.D. W.Va. 2015) ........................................................... 8

*Perry v. Schwarzenegger*,
    630 F.3d 898 (9th Cir. 2011) ................................................................... 9

*Security Ins. Co. v. Schipporeit, Inc.*,
    69 F.3d 1377 (7th Cir. 1995) ................................................................... 9

*Spangler v. Pasadena City Bd. of Ed.*,
    552 F.2d 1326 (9th Cir. 1977) ............................................................... 10

*State v. Williams*,
    117 S.E.2d 444 (N.C. 1960) ................................................................... 12

*Stuart v. Huff*,
    706 F.3d 345 (4th Cir. 2013) ............................................................. 9, 19

*Teague v. Bakker*,
    931 F.2d 259 (4th Cir. 1991) ........................................................... 17, 18

*Titan Atlas Mfg. v. Sisk*,
    2014 U.S. Dist. LEXIS 27094 (W.D. Va. Mar. 4, 2014) ...................... 17, 18

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) .............................................................................. 17

*United States v. N.C.*,
  2014 U.S. Dist. LEXIS 14787 (M.D.N.C. Feb. 6, 2014) ............................................. 19

*United States v. Virginia*,
  282 F.R.D. 403 (E.D. Va. 2012)....................................................................................... 8

*Wright v. Krispy Kreme Doughnuts, Inc.*,
  231 F.R.D. 475 (M.D.N.C. 2005)........................................................................... 5, 8, 14

**Statutes and Legislative History**
2015 Bill Text NC H.B. 2B (Mar. 23, 2016) ...................................................................... 3

N.C. Gen. Stat. § 115C-47 ................................................................................................. 3

N.C. Gen. Stat. § 1-72.2 ........................................................................................... passim

**Rules**
FED. R. CIV. P. 24 ....................................................................................................... passim

**Constitutional Provisions**
N.C. Const. Art. II, § 1 ..................................................................................................... 11

N.C. Const. Art. II, § 5 ..................................................................................................... 11

N.C. Const. Art. III, § 5 .................................................................................................... 12

N.C. Const. Art. IX, § 2 .................................................................................................... 11

N.C. Const. Art. IX, § 3 .................................................................................................... 11

N.C. Const. Art. IX, § 4 .................................................................................................... 11

N.C. Const. Art. IX, §§ 8, 9 ............................................................................................. 11

N.C. Const. Art. V, § 12 ................................................................................................... 11

N.C. Const. Art. V, § 7 ..................................................................................................... 11

**Court Documents**
Complaint, *Berger v. United States Dep't of Justice*,
  No. 5:16-cv-00240 (E.D.N.C. May 9, 2016).......................................................... 4, 6, 7

Complaint, *McCrory v. United States*,
  No. 5:16-cv-00238 (E.D.N.C. May 9, 2016)............................................................ 4, 12

Order granting motion to intervene, *American Civil Liberties Union v. Tennyson*,
No. 13-1030 (dkt. no. 43), 815 F.3d 183 (4th Cir. 2016) ......................................... 3, 15

**Other Authorities**
6-24 MOORE'S FEDERAL PRACTICE—CIVIL §§ 24.10-24.11 (3d ed. 1997).................... 5, 9

Blythe, Anne,
*NC Attorney General Refuses to Defend State from HB2 Legal Challenge*, THE
NEWS & OBSERVER (Mar. 29, 2016) ............................................................................ 19

Chemtob, Danielle,
*Spellings, Folt come out against House Bill 2*,
The Daily Tar Heel (Apr. 8, 2016) ............................................................................... 13

Department of Education, *Dear Colleague Letter on Transgender Students* (May 13,
2016)................................................................................................................................ 15

Wolverton, Paul,
*N.C. universities, facing lawsuit, not enforcing House Bill 2*, THE FAYETTEVILLE
OBSERVER (May 10, 2016)............................................................................................ 13

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

**INTRODUCTION AND SUMMARY**

This enforcement action by the United States Department of Justice ("Department") is a case of unusual importance to North Carolina, and of unusual concern to proposed Intervenors, Phil Berger, the President pro tempore of the North Carolina Senate, and Tim Moore, the Speaker of the North Carolina House of Representatives ("Proposed Intervenors"). Intervention is warranted for three reasons.

First, the Department's suit is a direct challenge to the validity under federal law of a critically important state statute—the "Public Facilities Privacy and Security Act" (the "Act"), commonly known as HB2—which seeks to protect the privacy and safety of people using publicly owned bath, locker and shower facilities throughout the State. Yet the State's attorney general has made clear that he will not defend the Act on behalf of the State as a whole. And the existing defendants have authority over only limited segments of the state entities and instrumentalities that would be affected by an adverse decision. In particular, the named defendants' authority does not extend to the Legislative Branch, which is covered by the Act and is squarely within the Intervenors' authority. Nor does it extend to the State's many public schools, whose bath, locker and shower facilities are subject to the same federal law—Title IX—that is the basis for the Department's suit against defendant University of North Carolina. That is one reason Intervenors filed their own declaratory judgment action challenging the Department's position, shortly before the Department filed its own suit.

Second, and more concretely, the remarkable legal theory advanced by the Department in this case would leave the State and its various instrumentalities with no effective way to protect the privacy and safety of the millions of North Carolinians using publicly owned bath, locker and shower facilities, including facilities in public schools. Under the Department's theory, it is apparently illegal for the police or other public officials to bar a person with mature, functioning male genitalia from a publicly owned ladies' bath, locker or shower facility if that person merely *claims* to "identify" as a "woman." That radical legal theory subjects every North Carolina female who dares use a publicly owned facility to the unwelcome sight of unclothed males in close proximity in the intimate settings of locker rooms and showers. It also subjects every North Carolina female using such a facility to a heightened risk of sexual predation by men falsely claiming to "identify" as women—including some 23,000 registered sex offenders currently residing in the state. Intervenors have a fiduciary interest in protecting all North Carolina women and girls from these threats, especially those that will arise in public schools and other facilities not within the jurisdiction of the individual defendants named in the Department's suit.

Third, and more generally, the Department's suit is at bottom an assault on the bedrock legal and social understanding of what differentiates men from women. Under North Carolina's view—embedded throughout its law and the law of all human societies since time out of mind—whether one is a man or a woman, and entitled to be treated as such, is an objective inquiry, driven by straightforward principles of anatomy and genetics. But under the Department's view, this view is itself discriminatory and bigoted.

2

And it must—as a matter of federal law—be replaced by a subjective approach in which what it means to be a man or woman is merely a psychological construct. The Department's avant-garde view is absurd, and its implementation would wreak havoc on North Carolina law in numerous areas, including state employment law, fair housing law, and family law. These are all matters within Intervenors' responsibility as leaders of the General Assembly. And no one is as well situated to explain and elaborate these issues as the Court wrestles with the Department's proposed brave new world.

For all these reasons, and those elaborated below, this is the quintessential case for application of the North Carolina statute giving these proposed Intervenors the right to intervene to defend laws passed by the General Assembly. *See* N.C. Gen. Stat. § 1-72.2; *see also, e.g., Fisher-Borne v. Smith*, 14 F.Supp.3d 699 (M.D.N.C. 2014) (granting intervention under Section 1-72.2); Order granting motion to intervene, *American Civil Liberties Union v. Tennyson,* No. 13-1030 (dkt. no. 43), 815 F.3d 183 (4th Cir. 2016) (granting motion to intervene based on Section 1-72.2). Permissive or mandatory intervention is thus plainly appropriate under Federal Rule of Civil Procedure 24.

## BACKGROUND

In relevant part, the Act provides that public multiple-occupancy restrooms, changing facilities, and showers shall be used only by persons of the same "biological sex" reflected on their birth certificates. 2015 Bill Text NC H.B. 2B (Mar. 23, 2016), amending N.C. Gen. Stat. § 115C-47. The Act explicitly allows public agencies to make accommodations for persons in special circumstances through single-occupancy

3

facilities, *id.* §§ 1.2(C), 1.3(C), and the Act does nothing to prevent the development of different policies in privately-owned restrooms, changing facilities, and showers.

Shortly after the Act was passed, on May 4, 2016, the Department sent letters to North Carolina Governor Patrick McCrory, the Secretary of the Department of Public Safety ("DPS") and the President of the University North Carolina ("UNC"), claiming that the Act facially violated three provisions of federal law—Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and the Violence Against Women Act (VAWA). The Department gave each recipient until Monday, May 9 to repudiate the Act and, additionally, to put in place new policies whereby any individuals who declare their "gender identity" to diverge from their biological sex be allowed to use the public bathroom, locker, and shower facilities of their choosing.

In response to those letters, on May 9, 2016, three declaratory judgment actions were filed. Proposed Intervenors sued the Department in the Eastern District of North Carolina, seeking a declaration that the Act facially complies with Title VII, Title IX, and VAWA and that the Department's actions violate both the Administrative Procedure Act and the United States Constitution. Complaint, *Berger v. United States Dep't of Justice*, No. 5:16-cv-00240 (E.D.N.C. May 9, 2016) ("Berger Complaint") (App'x A). The Governor and the DPS Secretary also sued the Department in the Eastern District, seeking a declaration that the Act complies with Title VII and VAWA, but without mentioning Title IX. Complaint, *McCrory v. United States*, No. 5:16-cv-00238 (E.D.N.C. May 9, 2016) ("McCrory Complaint"). After these two suits were filed, the Department brought the present action against Governor McCrory, DPS, UNC, and UNC's Board of

4

Governors, seeking a declaration that the Act facially violates Title VII, Title IX, and VAWA, and seeking preliminary and permanent injunctive relief.

The Proposed Intervenors, in their official capacities as leaders of the North Carolina General Assembly, seek to intervene in this action under both the permissive standards of Rule 24(b) and the mandatory standards of Rule 24(a), to defend the validity of the Act and to establish the unconstitutionality of the Department's misinterpretations of federal civil rights laws.

## ARGUMENT

### I. The Court should grant permissive intervention under Rule 24(b), to ensure that the Act receives the strongest possible defense.

Permissive intervention is appropriate under Rule 24(b) when "an applicant's claim or defense and the main action have a question of law or fact in common," and when the proposed intervention is "timely" and will not "unduly prejudice or delay the rights of the original parties." *See* FED. R. CIV. P. 24(b)(1)(B); 24(b)(3); *Wright v. Krispy Kreme Doughnuts, Inc.*, 231 F.R.D. 475, 479 (M.D.N.C. 2005); *see also generally* 6-24 MOORE'S FEDERAL PRACTICE—CIVIL §§ 24.10-24.11 (3d ed. 1997)). Whether to permit intervention lies within the Court's sound discretion, *Hill v. Western Elec. Co.*, 672 F.2d 381, 385-86 (4th Cir. 1982), but the Fourth Circuit has counseled that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

5

Under these standards, the Court should permit Senator Berger and Speaker Moore to intervene in this case.

**A.** ***The General Assembly's leaders have claims and defenses that share multiple common questions of law and fact with the Department's action.***

The key factor under Rule 24(b)—namely, whether movant has claims or defenses that share "a common question of law or fact" with the main action—is plainly met here.

First, on the same day the Department sued in this District, the Proposed Intervenors filed their own declaratory judgment action in the Eastern District of North Carolina, raising multiple questions of law and fact nearly identical to questions raised by the Department—questions which, moreover, are raised in the pleading accompanying this intervention. As to questions of law, both the Department and the proposed Intervenors seek declaratory judgments concerning whether the Act facially complies with Title VII, Title IX, and VAWA. The Department's action seeks a declaration that compliance with the Act by North Carolina officials and agencies facially violates those federal laws because the Act discriminates on the basis of "gender identity." *See* Dep't Compl., at ¶¶53-54 (Title VII); *id.* at ¶55 (Title IX); *id.* at ¶56 (VAWA). The *Berger* action seeks the opposite relief—namely, a declaration that the Act does *not* facially violate those laws because, properly understood, Title VII and Title IX do not encompass "gender identity" discrimination, and because VAWA approves precisely the kind of sex-segregated facilities required by the Act. *See* Berger Compl., at ¶¶67-75 (Title VII); *id.* at ¶¶76-89 (Title IX); *id.* at ¶¶90-100 (VAWA). Thus, the Department's and the Proposed Intervenors' claims require resolution of the same legal questions.

6

As to questions of fact, both complaints (as well as the pleading accompanying this intervention) raise factual allegations concerning precisely the same transactions, namely: (1) the enactment and content of the Act (*compare* Dep't Compl., at ¶¶11-19, *with* Berger Compl. at ¶¶21-28); and (2) the Department's "determination" letters sent to North Carolina officials and agencies regarding the Act (*compare* Dep't Compl., at ¶28, *with* Berger Compl., at ¶¶29-43). Indeed, the Department's allegations regarding the Act quote statements allegedly made by one of the two proposed Intervenors. *See* Dep't Compl., at ¶ 18 (quoting statements by "Senate President Phil Berger" concerning the Act allegedly appearing "on his website"). Thus, the Department's and the Proposed Intervenors' claims require resolution of the same factual questions.

Second, the Intervenors are the highest leaders of the Legislative Branch of the North Carolina government, which is directly subject to the requirements of the Act, would be directly subject to the Department's proposed legal requirements under Title VII if the Department prevailed, and is not subject to the authority of the Governor or the other defendants here. Thus, in their capacities as the highest officers of the Legislative Branch, the Intervenors are subject to the same claims as the defendants in the main action, and have the same defenses.

For all of these reasons, the proposed Intervenors' claims and defenses therefore share multiple common questions of law and fact with the main action.

**B.      This intervention is timely and will not delay the case's resolution or prejudice the original parties.**

Rule 24(b) also requires that an intervention motion be "timely" and not "unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(1); 24(b)(3). The proposed intervention easily satisfies both requirements.

First, the motion is undoubtedly timely, given that the main action is less than two weeks old and nothing of substance has occurred save the filing of the Department's complaint. *See Alt v. United States EPA*, 758 F.3d 588, 591 (4th Cir. 2014) (examining progress of suit in determining timeliness); *see also, e.g.*, *Ohio Valley Envtl. Coalition, Inc. v. McCarthy*, 313 F.R.D. 10, 17 (S.D. W.Va. 2015) (holding intervention timely when "other than filing the Complaint, Amended Complaint, and Answer, no other action had taken place in this case before [applicant] filed its motion to intervene"); *United States v. Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely."); *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 166 F.R.D. 43, 46 (M.D. Ga. 1996) (timeliness "easily met" when motion to intervene is filed before the answer). By way of comparison, courts in this Circuit have granted motions to intervene filed one, six, and nine months— and even up to two years—after the filing of a complaint. *See, e.g.*, *Alt*,  758 F.3d at 589 (one and six months); *Wright*, 231 F.R.D. at 478 (nine months); *CVLR Performance Horses, Inc. v. Wynne*, No. 6:11-cv-00035, 2013 WL 6409894, at *1-2 (W.D. Va. Dec. 9, 2013) (two years), *aff'd*, 792 F.3d 469 (4th Cir. 2015).

8

Second, for largely the same reasons, the proposed intervention will not unduly delay or prejudice adjudication of the original parties' rights. For instance, the intervention could not possibly complicate discovery, since none has yet occurred. *See, e.g., Liner v. DiCresce*, 905 F. Supp. 280, 294 (M.D.N.C. 1994) ("The parties have not engaged in any discovery, so adding new plaintiffs will not require any duplication of discovery nor create any undue delay."); *Stuart v. Huff,* 706 F.3d 345, 355 (4th Cir. 2013) (finding undue delay when adding parties would complicate discovery). And while the Department may have to respond to additional arguments if intervention is granted, the Department "can hardly be said to be prejudiced by having to prove a lawsuit it chose to initiate." *Security Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). In sum, "[a]t this early stage of the case, where even the named defendants are not yet required to answer, no prejudice to plaintiffs can be shown." *Marshall v. Meadows*, 921 F. Supp. 1490, 1492 (E.D. Va. 1996).

**C.     *Unlike the parties sued by the Department, the General Assembly's leaders have general oversight of the Act as it applies to all functions of North Carolina government, including prisons, universities, and local schools— and the Legislative Branch itself.***

In addition to the factors set forth in Rule 24(b), a Court deciding whether to grant permissive intervention may consider other factors, such as "the nature and extent of the intervenor's interest," the intervenor's "standing to raise relevant legal issues," and whether the intervenor will "significantly contribute to the full development of the underlying factual issues" and, by extension, the underlying legal arguments. *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (quoting *Spangler v. Pasadena City*

*Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977)) *vacated on other grounds*, *Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013); *see also, e.g., L.S. v. Cansler*, 2011 U.S. Dist. LEXIS 139311, at 4-5 (E.D.N.C. Dec. 5, 2011) (citing *Spangler, supra*); *and see generally* 6-24 MOORE'S FEDERAL PRACTICE, at §24.10[2][b] (discussing range of factors governing permissive intervention). These additional considerations also strongly support permissive intervention.

First, as the highest leaders of the Legislative Branch, which is likewise subject to both the Act and some of the federal statutes invoked by the Department, Proposed Intervenors have a concrete legal interest in defending the Act. By virtue of being the respective leaders of both chambers of the General Assembly, they are expressly authorized by North Carolina law to defend the Act in litigation. *See* N.C. GEN. STAT. § 1-72.2 (House Speaker and Senate President pro tem "jointly have standing to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute or provision of the North Carolina Constitution"). This is a sufficient basis for intervention.

Second, for the same reasons, the Proposed Intervenors clearly have standing to defend the Act in federal court. *See, e.g., Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997) (confirming that "state legislators have standing to contest a decision holding a state statute unconstitutional if state law authorizes legislators to represent the State's interests") (citing *Karcher v. May*, 484 U.S. 72, 82 (1987)); *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2664 (2013) (noting that "a State must be able to designate agents to represent it in federal court"). That is to say, they are not merely "concerned

bystanders" lacking a cognizable interest in the litigation, *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (internal quotations omitted), but are instead state officials legally designated by North Carolina to act on the legislature's behalf in defending challenged state laws. These considerations not only support the right to intervene under Rule 24(a), *see infra* part II, but *a fortiori* they strengthen the case for permissive intervention under Rule 24(b).

Third, the Proposed Intervenors' interest in the Act is broad and comprehensive. Unlike the other parties sued by the Department, the leaders of the General Assembly have general oversight of *all* areas of North Carolina government potentially impacted by litigation over the Act's validity. For example, the General Assembly oversees not only the maintenance and financing of North Carolina's higher education system including UNC and "the other public institutions of higher education," N.C. Const. Art. IX, §§ 8, 9; *id.* Art. V, § 12, but also the organization and financing of North Carolina public schools, N.C. Const. Art. IX, § 2; and the organization of public educational districts, *id.* Art IX, § 4. The General Assembly also oversees the establishment and operation of state correctional facilities. *Id.* Art. XI, § 3. Finally, as the sole body in North Carolina with the authority to enact laws, *id.* Art. II, § 1, the General Assembly alone can modify the requirements of state employment and anti-discrimination laws, as well as appropriate funds necessary to safeguard the state budget, *id.* Art. V, § 7.

None of the existing Defendants in this litigation has the General Assembly's comprehensive authority over the areas potentially impacted by the Department's challenge to the Act. For instance, while having some role in state public education, the

Governor lacks the General Assembly's broad authority over state educational budgeting, funding, and governance. As the North Carolina Supreme Court has explained, the state constitution's "mandate" for establishing public schools is "exclusively within the province of the General Assembly." *Moore v. Board of Education*, 193 S.E. 732, 733 (N.C. 1937). That authority extends to setting school district boundaries, creating supplemental funding programs for lower-income districts, and selecting which education programs to fund. *Leandro v. State*, 488 S.E.2d 249, 258 (N.C. 1997); *Hughey v. Cloninger*, 253 S.E.2d 898, 900 (N.C. 1979); *Kings Mt. Bd. of Educ. v. N.C. State Bd. of Educ.*, 583 S.E.2d 629, 633 (N.C. App. 2003). The General Assembly also retains supervisory authority over the State Board of Education and county educational systems—authority the Governor lacks. *Hughey*, 253 S.E.2d at 900; *State v. Williams*, 117 S.E.2d 444, 447 (N.C. 1960). Finally, while the Governor "prepare[s] and recommend[s]" to the General Assembly a comprehensive annual state budget, and "administers" it, the General Assembly alone "enact[s]" the budget itself. N.C. Const. Art. III, § 5.

Consequently, the Governor may have limited ability to defend the Act with respect to the education funding threatened by the Department's Title IX action—a limitation suggested by the facts that the Department's letter to the Governor did not mention Title IX and that the Governor's own declaratory judgment action did not raise a Title IX claim. *See* McCrory Complaint, *supra*. By contrast, the proposed Intervenor's declaratory judgment action, as well as the proposed pleading accompanying its intervention motion, raise numerous defenses and counterclaims regarding Title IX.

12

The same considerations apply with greater force to UNC and the North Carolina Board of Governors. Those entities do not have comprehensive authority over public education in North Carolina, and they have no role in local public education. But any judgment against them in this action will impact, not only those entities, but funding for all educational programs throughout the State. Only the proposed Intervenors have broad legislative and oversight authority over North Carolina public education at all levels, and consequently they are in a far better position to comprehensively defend *all* of North Carolina's interests in avoiding a potentially catastrophic loss of federal funding. Furthermore, UNC officials have recently made public statements indicating it may have misgivings about enforcing the Act.[1]

In sum, these additional considerations strongly counsel in favor of allowing the Proposed Intervenors to enter the lawsuit so that at least one party is presenting a vigorous and comprehensive defense of the Act with respect to all aspects of North Carolina government put in jeopardy by the Department's action, including the crucial Title IX component.

---

[1] *See, e.g.,* Paul Wolverton, *N.C. universities, facing lawsuit, not enforcing House Bill 2*, THE FAYETTEVILLE OBSERVER (May 10, 2016) (reporting that "[t]he 17-campus University of North Carolina system is not enforcing North Carolina's House Bill 2 … UNC President Margaret Spellings told reporters on Tuesday evening"), *available at*: http://www.fayobserver.com/news/local/n-c-universities-facing-lawsuit-not-enforcing-house-bill/article_04b501e2-dd79-5012-99d0-51aa8da87f62.html; Danielle Chemtob, *Spellings, Folt come out against House Bill 2*, The Daily Tar Heel (Apr. 8, 2016) (reporting that "[a] campus-wide email from UNC-CH Chancellor Carol Folt and other administrators said the University does not agree with the controversial House Bill 2"), *available at:* http://www.dailytarheel.com/article/2016/04/spellings-clarifies-hb2-compliance.

13

## II. Alternatively, Senator Berger and Speaker Moore have a right to intervene under Rule 24(a)(2).

Although the Court need not reach the question, Proposed Intervenors also have a right to intervene under Federal Rule of Civil Procedure 24(a)(2). To establish such a right, an applicant must:

> (1) "make a timely motion to intervene; (2) have an interest in 'the subject of the action'; (3) be 'so situated that the disposition of the action may … impair or impede the applicant's ability to protect that interest'; and (4) show that he is not adequately represented by existing parties."

*Fisher-Borne*, 14 F.Supp.3d at 702 (quoting FED. R. CIV. P. 24(a)(2); *Wright*, 231 F.R.D. at 477). As noted above, these intervention factors should be given a "liberal" application so to as to "dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller*, 802 F.2d at 729 (internal quotations and citation omitted). The Court must accept as true the non-conclusory allegations of the motion and the accompanying pleading.[2]

### A. The motion to intervene is timely.

As already shown, the first requirement is satisfied—that is, the motion to intervene is timely—because it was filed less than two weeks after the Department filed its action and, moreover, before any responsive pleadings were filed. For the same reasons, the intervention will neither unduly delay the action nor prejudice the existing parties. *See supra* part I.B.

---

[2]     *See Chesapeake Bay Found. v. Am. Recovery Co.*, 769 F.2d 207, 209 n.* (4th Cir. 1985)

**B.** **Proposed Intervenors have a significantly protectable interest in the Department's action.**

To justify intervention of right a movant's interest must also be "'significantly protectable,' … meaning that the interest must be more than a general concern with the subject matter." *Fisher-Borne*, 14 F.Supp.3d at 703 (citing *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). The Proposed Intervenors easily meet this standard for numerous reasons.

First, as noted, Proposed Intervenors are directly responsible for the Legislative Branch of the North Carolina Government. That portion of the state government is subject to both the Act and Title VII and, if the Department's position prevailed here, would therefore suffer the same harm as all other state entities.

Second, North Carolina law expressly empowers the Intervenors, as the leaders of the General Assembly, to intervene in litigation to defend challenged state laws. *See* N.C. GEN. STAT. § 1-72.2. A recent decision from this District has already determined, correctly, that this statute creates a sufficient interest under Rule 24(a) by "provid[ing] a … mechanism through which the Speaker of the House and President Pro Tempore of the Senate may defend laws passed by the North Carolina General Assembly." *Fisher-Borne*, 14 F.Supp.3d at 703 (citing N.C. GEN. STAT. § 1-72.2) *see also* Order granting motion to intervene, *American Civil Liberties Union v. Tennyson,* No. 13-1030 (dkt. no. 43), 815 F.3d 183 (4th Cir. 2016) (granting motion to intervene based on Section 1-72.2).

Third, Proposed Intervenors have an interest in protecting North Carolina's system of public education. As explained above, the General Assembly alone has comprehensive

authority over the structure, governance, and financing of the state educational system, at every level. *See supra* part I.C. The integrity of that system is directly imperiled by the Department's attempt to force a radical revision of North Carolina's policies regarding basic privacy and security in public restrooms, locker rooms, and shower facilities—a revision, moreover, that if once accomplished would ripple out into numerous other areas. *See*, *e.g.*, Department of Education, *Dear Colleague Letter on Transgender Students* (May 13, 2016), *available at* http://1.usa.gov/25aBJLM (identifying potential impacts on education records, identification documents, athletics, single-sex classes, and housing and overnight accommodations). And, of course, failure to capitulate to the Department's threats will put in jeopardy over $2 billion in federal funds, a catastrophic result that the General Assembly has a keen interest in preventing.

Fourth, the Proposed Intervenors have significantly protectable interest in vindicating the General Assembly's core lawmaking function. *See*, *e.g.*, *Coleman v. Miller*, 307 U.S. 433, 438 (1939) (concluding state legislators have "a plain, direct and adequate interest in maintaining the effectiveness of their votes"); *Orange Env't, Inc. v. Cty. of Orange*, 817 F. Supp. 1051, 1056 (S.D.N.Y. 1993) (noting legislators' interest in "rais[ing] claims of injury to the legislative body's statutory interest or rights"). At a minimum, as leaders of the General Assembly, the Proposed Intervenors have an interest in defending the sensible balancing of privacy, security, and personal dignity reflected in the Act. More profoundly, however, the Proposed Intervenors have a keen interest in safeguarding the overall integrity of North Carolina law, which in numerous areas recognizes the basic distinction between "male" and "female." *See*, *e.g.*, N.C. Gen. Stat

16

§ 14-33 (rape laws); N.C. Gen. Stat. § 78C-86(3) (athletic programs); N.C. Gen. Stat. § 153A-228 (segregation in prisons). At bottom, the Department's action seeks to radically redefine those basic categories which have, since time out of mind, informed sensible legal distinctions like the ones at issue in this case.

**C.     *Disposition of the main action may impair or impede the Proposed Intervenors' ability to protect their interests in defending the Act.***

For the same reasons, disposition of the Department's action will doubtlessly "impair or impede" the Proposed Intervenors' interests. If the Department prevails and invalidates the Act, then (1) the Intervenors' ability to govern the Legislative Branch will be *directly* impeded, (2) the Intervenors' statutorily-conferred interest in defending the Act will likewise be *directly* impeded (*see* N.C. GEN. STAT. § 1-72.2); (3) the Intervenors' authority over North Carolina's system of public schools and correctional facilities will be *directly* impeded, and (4) the Intervenors' interests in protecting the integrity of North Carolina's laws—namely, the basic and ubiquitous distinction between "male" and "female"—will be *directly* impeded.

**D.     *Because the parties sued by the Department have only limited authority under state law, they may not be in a position to fully defend the Act across all state functions.***

Finally, Proposed Intervenors' interests are not adequately represented by the existing parties. An intervenor's burden to show inadequate representation "'should be treated as minimal.'" *Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). The movant need not show that the current representation of his interests will "definitely" be inadequate," only

that it "may be" inadequate." *JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x

286, 289 (4th Cir. 2009) (citing *Trbovich*, 404 U.S. at 538 n.10; *Teague*, 931 F.2d at

262). "Many factors may suggest inadequate representation." *Titan Atlas Mfg. v. Sisk*,

2014 U.S. Dist. LEXIS 27094, at 15 (W.D. Va. Mar. 4, 2014), such as (1) whether the

interests of intervenors and existing parties are identical or may diverge[3]; (2) whether

intervenors have "stronger incentives" to defend their interests more "vigorously" than

existing parties[4]; and (3) whether intervenors raise additional legal theories not raised by

existing parties.[5]  Under these standards, numerous grounds suggest that the Proposed

Intervenors interests are inadequately represented.

First, as explained above, among existing parties only the Proposed Intervenors

can represent North Carolina's general interests in the validity of the Act across all areas

of North Carolina government—and across all areas of North Carolina law potentially

impacted by the Department's radical position in this case. None of the existing

defendants can do so. By contrast, the Proposed Intervenors are specifically empowered

to do so by state law. *See supra* I.C.

Second, among existing parties only the Proposed Intervenors can represent North

Carolina's general interests in the integrity and financial solvency of its public

---

[3]     *See, e.g., In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (noting interests may
converge in some respects but diverge in others); *Felman Prod. v. Indus. Risk Insurers*, 2009
U.S. Dist. LEXIS 117672, at 9-10  (S.D. W.Va. Dec. 16, 2009) (granting intervention when
interests of parties and intervenor "are not coextensive") (citing *Teague*, 931 F.2d at 262);
*Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*, 2016 U.S. Dist. LEXIS 16610, at 16
(E.D. Va. Feb. 9, 2016) (finding "distinguishable interests" sufficient for intervention).

[4]     *Titan Atlas*, 2014 U.S. Dist. LEXIS at 16; *Teague*, 931 F.2d at 262.

[5]     *Titan Atlas*, 2014 U.S. Dist. LEXIS at 15-16 (citing *JLS*, 321 F.App'x at 291).

educational system at every level. As explained above, the Governor, UNC, and the North Carolina Board of Governors lack the kind of comprehensive interests in North Carolina's system of public education expressly delegated to the General Assembly under the North Carolina Constitution. *See supra* I.C.

Third, specifically with respect to the crucial Title IX component of the Department's action, Proposed Intervenors have a direct interest in defending the Act that the existing parties lack. As already explained, the Governor's declaratory judgment action against the Department declines to raise a Title IX claim (while raising both Title VII and VAWA claims), suggesting that the Governor lacks standing to litigate the Title IX claim. UNC's position appears even more problematic. Not only does UNC lack the Proposed Intervenors' top-to-bottom interest in North Carolina public education, but UNC has repeatedly made public statements suggesting it is ambivalent about enforcing the Act. *See supra* I.C.

Finally, the North Carolina Attorney General has publicly attacked the Act and refused to defend it in court. While it is the attorney general's duty to defend North Carolina whenever it is sued, as it has been here, *see* N.C. GEN. STAT. § 114-2(1), in this case the attorney general has publicly called the Act "a national embarrassment," argued that the Act violates federal law, and declined to defend any of the existing parties in legal challenges to the Act. *See* Anne Blythe, *NC Attorney General Refuses to Defend State from HB2 Legal Challenge*, THE NEWS & OBSERVER (Mar. 29, 2016), *available at:*

19

http://www.newsobserver.com/news/politics-government/state-politics/article

68780657.html.[6]

Consequently, absent intervention by the leaders of the General Assembly, this case would lack the participation by any state official with broad authority to vigorously defend North Carolina laws. That would be a glaring omission, given the radical nature of the Department's action—which not only seeks to undermine the integrity and solvency of North Carolina's educational system, employment standards, and correctional facilities, but also seeks to deprive the North Carolina General Assembly of the basic authority to provide for the privacy and safety of North Carolina's citizens.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully ask the Court to grant them intervention, either permissively or by right.

---

[6]     For all of these reasons, no "presumption of adequacy of representation" applies here. *See Stuart v. Huff*, 706 F.3d 345, 350-51 (2013).  First, this is not a case where private parties seek intervention to join existing government parties in defending a statute. *See, e.g., United States v. N.C.*, 2014 U.S. Dist. LEXIS 14787 (M.D.N.C. Feb. 6, 2014) (denying motion by private group to intervene). Instead, the Intervenors are themselves government actors specifically designated to defend the challenged Act. Second, this is not a case where the Intervenors share the same objectives as existing parties. *Cf., e.g., Stuart*, 706 F.3d at 351.  Instead, the Intervenors' interests in defending the Act are both different from existing defendants' interests (because Intervenors alone can defend the prerogatives of the Legislative Branch) and more comprehensive (because Intervenors alone can defend the Act across all government functions). Finally, as discussed above, with respect to the crucial Title IX claim, UNC has publicly expressed disagreement with the Act, rebutting any presumption of adequacy even if it applied. *See, e.g., Bragg v. Robertson*, 183 F.R.D. 494, 496 (S.D. W.Va. 1998).

Respectfully submitted,

By: /s/  S. Kyle Duncan                    By:  /s/ Robert D. Potter, Jr.

S. KYLE DUNCAN* (DC Bar #1010452)         ROBERT D. POTTER, JR. (NC Bar #17553)
  *Lead Counsel*                          ATTORNEY AT LAW
GENE C. SCHAERR* (DC Bar #416638)         2820 Selwyn Avenue, #840
SCHAERR | DUNCAN LLP                       Charlotte, NC 28209
1717 K Street NW, Suite 900               704-552-7742
Washington, DC 20006                      rdpotter@rdpotterlaw.com
202-714-9492
571-730-4429 (fax)
kduncan@schaerr-duncan.com
gschaerr@schaerr-duncan.com
*Specially Appearing Pursuant to Local
Civil Rule 83.1(d)*
                    *Attorneys for Proposed Intervenors*

May 17, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/  S. Kyle Duncan
S. Kyle Duncan
*Attorney for Proposed Intervenors*