UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF NORTH CAROLINA; PATRICK | ) | |
| MCCRORY, in his official capacity as Governor | ) | |
| of North Carolina; NORTH CAROLINA | ) | |
| DEPARTMENT OF PUBLIC SAFETY; | ) | |
| UNIVERSITY OF NORTH CAROLINA; and | ) | |
| BOARD OF GOVERNORS OF THE | ) | |
| UNIVERSITY OF NORTH CAROLINA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | Case No. 1:16-CV-00425-TDS-JEP |
| | ) | |
| STATE OF NORTH CAROLINA; | ) | |
| PATRICK L. MCCRORY, in his official capacity | ) | |
| as Governor of North Carolina; and | ) | |
| NORTH CAROLINA DEPARTMENT OF | ) | |
| PUBLIC SAFETY, | ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

## ANSWER AND COUNTERCLAIMS OF THE STATE OF NORTH CAROLINA, GOVERNOR PATRICK L. MCCRORY, AND THE NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY

Defendants the State of North Carolina, Patrick McCrory, in his official capacity as

Governor of North Carolina ("Governor McCrory"), and the North Carolina Department of

Public Safety ("DPS") hereby respond to the complaint of plaintiff United States of America ("plaintiff," "United States," or "Federal Executive") as follows:

<u>FIRST DEFENSE</u>

Defendants State of North Carolina, Governor McCrory, and DPS specifically respond to the individually numbered allegations of plaintiff's complaint as follows:

1.      Admitted only that the complaint filed by plaintiff initiating this action challenges the North Carolina Public Facilities Privacy and Security Act, N.C. Session Law 2016-3 ("the Act"), which is a law duly enacted by the North Carolina General Assembly that speaks for itself.  Except as expressly admitted, denied.

2.      Denied.

3.      The allegations of paragraph no. 3 of plaintiff's complaint state legal conclusions to which no response is necessary.  To the extent a response is deemed necessary, admitted only that this Court generally has jurisdiction over claims of unlawful discrimination under federal law.  It is, however, expressly denied that this Court has jurisdiction over claims that any of the defendants named by plaintiff herein have discriminated on the basis of transgender status because no applicable federal statute creates such liability and because defendants' immunity from such claims has never been validly waived, surrendered, or abrogated.  Except as expressly admitted, denied.

4.      The allegations of paragraph no. 4 of plaintiff's complaint state legal conclusions to which no response is necessary.  To the extent a response is deemed necessary, it is admitted only that venue for this action is properly laid in the United States District Court for the Middle District of North Carolina.  Except as expressly admitted, denied.

5.     The allegations of paragraph no. 5 of plaintiff's complaint state legal conclusions to which no response is necessary.  To the extent a response is deemed necessary, admitted only that this Court generally has the authority to enter declaratory judgments and provide injunctive relief.  It is expressly denied, however, that this Court has jurisdiction over claims that any of the defendants named by plaintiff herein have engaged in unlawful discrimination on the basis of transgender status because no applicable federal statute creates such liability and because defendants' immunity from such claims has never been validly waived, surrendered, or abrogated.  Except as expressly admitted, denied.

6.     It is admitted only that the State of North Carolina may, under some circumstances, be deemed a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).  It is expressly denied that the State of North Carolina may be sued for claims of discrimination on the basis of transgender status because no applicable federal statute creates such liability and because the State of North Carolina's immunity from such claims has never been validly waived, surrendered, or abrogated. Except as expressly admitted, denied.

7.     It is admitted that Governor McCrory is the duly elected governor of the State of North Carolina and that the North Carolina Constitution vests certain powers and authority in him by virtue of that office.  The North Carolina Constitution is a written document and speaks for itself.  It is further admitted that Governor McCrory, in his official capacity as governor, may under some circumstances, be deemed a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).  It is expressly denied that Governor McCrory may be sued in his official capacity for claims of discrimination on the basis of transgender status because no applicable federal statute creates such liability and because his

3

immunity from such claims has never been validly waived, surrendered, or abrogated. Except as expressly admitted, denied.

8.      It is admitted that DPS is an agency of the State of North Carolina, that DPS has responsibility for, among other things, public safety, corrections, and emergency management, that DPS has received federal funds pursuant to federal law, that some such funds have been provided pursuant to the Violence Against Women Reauthorization Act of 2013 ("VAWA"), 42 U.S.C. § 13925(b)(13), and that certain conditions apply to some of those funds. It is further admitted that DPS may, under some circumstances, be deemed a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b). It is expressly denied that DPS may be sued for claims of discrimination on the basis of transgender status because no applicable federal statute creates such liability and because DPS's immunity from such claims has never been validly waived, surrendered, or abrogated. It is further denied that the terms and conditions for receipt of funds under VAWA may be unilaterally changed after the fact by the United States without the express consent of DPS and the State of North Carolina. Except as expressly admitted, denied.

9.      It is admitted that the University of North Carolina is a public, multi-campus university that is organized and existing under North Carolina law, that it has received federal funds pursuant to federal law, that some such funds have been provided pursuant to VAWA, and that certain conditions apply to those funds. It is further admitted that the University of North Carolina may, under some circumstances, be deemed a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b). It is expressly denied that the University of North Carolina may be sued for claims of discrimination on the basis of transgender status because no applicable federal statute creates such liability and

because the University of North Carolina's immunity from such claims has never been validly waived, surrendered, or abrogated. It is further denied that the terms and conditions for receipt of funds under VAWA may be unilaterally changed after the fact by the United States without the express consent of the University of North Carolina and the State of North Carolina. Except as expressly admitted, denied.

10.    It is admitted that the Board of Governors of the University of North Carolina is responsible for the general control, supervision, and governance of the University of North Carolina. The remainder of the allegations of paragraph no. 10 of plaintiff's complaint state legal conclusions to which no response is necessary and are otherwise not addressed to these answering defendants. To the extent a response is deemed necessary from these answering defendants, denied. Except as expressly admitted, denied.

11.    It is admitted that a special session of the North Carolina General Assembly convened on or about March 23, 2016, and that the result of that session was passage of the Act. Except as expressly admitted, denied.

12.    The Act is a public law and speaks for itself. To the extent a response is deemed necessary from these answering defendants, denied. Except as expressly admitted, denied.

13.    It is admitted only that the enactment of Ordinance 7056 by the City Council in Charlotte, North Carolina, was a factor in the North Carolina General Assembly's decision to convene and enact common sense policies to protect the privacy and safety of all individuals in the State of North Carolina and to preserve the ability of private businesses to set their own policies regarding use of their restroom and changing facilities according to sex, as has been long permitted under federal law. Except as expressly admitted, denied.

5

14.     It is admitted only that Governor McCrory and some members of the North Carolina legislature made public statements regarding the Act, including its effect on Charlotte Ordinance 7056.  Except as expressly admitted, denied.

15.     It is admitted that Governor McCrory expressed concerns about the effects Charlotte's passage of Ordinance 7056 would have on privacy and safety.  It is further admitted that Governor McCrory expressed his belief that the General Assembly would likely take appropriate action to prevent private businesses in Charlotte from being denied the right to set their own policies regarding use of their restroom and changing facilities according to sex and to protect privacy and safety generally.  Except as expressly admitted, denied.

16.     These answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph no. 16 of plaintiff's complaint, and those allegations are therefore deemed denied.

17.     Admitted.

18.     These answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph no. 18 of plaintiff's complaint, and those allegations are therefore deemed denied.

19.     These answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph no. 19 of plaintiff's complaint, and those allegations are therefore deemed denied.

20.     Upon information and belief, admitted that President Spellings issued a directive to chancellors within the University of North Carolina System regarding compliance with the Act.  That directive is a written document and speaks for itself.  Except as expressly admitted, denied.

21. It is admitted only that the United States Department of Justice generally possesses authority to enforce Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 et seq. It is expressly denied that any of the parties named as defendants by the United States in this lawsuit have violated Title IX. It is further expressly denied that any of the parties named as defendants by the United States in this lawsuit may be found liable under Title IX for treating an individual consistent with his or her biological sex. Additionally, it is denied that the United States Department of Justice or any other federal executive department or agency has the authority to redefine the term "sex" as used in Title IX to mean anything other than biological sex. Except as expressly admitted, denied.

22. Admitted, upon information and belief, that on or about April 8, 2016, the United States Department of Justice issued a letter to President Spellings that threatened to interfere with the receipt of federal funds by the University of North Carolina unless President Spellings disobeyed a duly enacted state law. The letter is a written document and speaks for itself. Except as expressly admitted, denied.

23. Upon information and belief, President Spellings provided a written response to the letter from the United States Department of Justice. That response is a written document and speaks for itself. Except as expressly admitted, denied.

24. It is admitted that Governor McCrory issued Executive Order 93 ("EO 93") on April 12, 2016, and that this order expanded discrimination protections to state employees on the bases of sexual orientation and gender identity, among others. It is further admitted that EO 93 affirmed North Carolina law that cabinet agencies should require multiple occupancy bathroom and changing facilities to be designated for and only used by persons based on their biological sex, reaffirmed North Carolina law that agencies may make a reasonable accommodation upon

request due to special circumstances, and directed all agencies to make a reasonable accommodation of a single occupancy restroom, locker room, or shower facility when readily available and when practicable. Except as expressly admitted, denied.

25. The allegations of paragraph no. 25 state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, it is expressly denied that either Title IX or VAWA requires that a person be permitted to use a multi-occupancy bathroom or changing facility that is inconsistent with the person's biological sex. It is further denied that any party named as a defendant by the United States in this lawsuit has failed to comply with Title IX or VAWA at any time relevant to this complaint. Except as expressly admitted, denied.

26. The allegations of paragraph no. 26 state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, it is expressly denied that VAWA requires that a person be permitted to use a multi-occupancy bathroom or changing facility that is inconsistent with the person's biological sex. It is further denied that any party named as a defendant by the United States in this lawsuit has failed to comply with VAWA at any time relevant to this complaint. Except as expressly admitted, denied.

27. The allegations of paragraph no. 27 state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, it is admitted only that Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., contributes to regulating access to bathroom and changing facilities in the workplace at public agencies in the State of North Carolina. It is expressly denied that Title VII requires that a person be permitted to use a multi-occupancy bathroom or changing facility that is inconsistent with the person's biological sex. It is further denied that any party named as a defendant by the United States in this lawsuit

has failed to comply with Title VII at any time relevant to this complaint. Except as expressly admitted, denied.

28.     It is admitted only that, on or about May 4, 2016, a senior official at the United States Department of Justice sent letters threatening defendants if they failed to disobey a duly enacted state law. Those letters are written documents and speak for themselves. It is expressly denied that any party named as a defendant by the United States in this lawsuit has engaged in discrimination in violation of Title VII, Title IX, and/or VAWA at anytime relevant to plaintiff's complaint. Except as expressly admitted, denied.

29.     Denied. Prior to the filing of this complaint, Governor McCrory and DPS Secretary Frank Perry filed an action in the United States District Court for the Eastern District of North Carolina seeking judicial protection from the erroneous reinterpretation of federal law being advanced by the Federal Executive. That lawsuit named the United States as a defendant and raised many of the same issues as the instant complaint. Rather than answer this first-filed lawsuit, the United States elected to file this action in a separate judicial district, thereby needlessly duplicating lawsuits and increasing the costs of litigation for the taxpayers of North Carolina.

30.     It is admitted only that a child born in the State of North Carolina is typically issued a birth certificate that reflects his or her biological sex. Upon information and belief, this is the practice that is generally followed throughout the United States and most of the rest of the world. It is further admitted, upon information and belief, that children born with ambiguous genitalia generally require further examination in order to determine their sex. Except as expressly admitted, denied.

31.     It is expressly denied that "sex" within the meaning of Title VII, Title IX, and VAWA has any meaning other than an individual's biological sex.  It is further denied that legally "sex" means or includes "an individual's internal sense of being male or female."  Except as expressly admitted, denied.

32.     Denied.  The meaning of the term "sex" is not ambiguous.  An individual's sex is determined on the basis of objective and readily ascertainable biological facts.

33.     Denied.  The term "sex" does not mean or include "gender identity."

34.     It is admitted only that the term "transgender" is frequently used to describe an individual who identifies himself or herself as a member of the opposite sex. Except as expressly admitted, denied.

35.     It is admitted only that an individual, whether a child or an adult, may subjectively identify himself or herself as a member of the opposite sex and that an individual's decision to publicly identify as a member of the opposite sex may be based on many factors.  Except as expressly admitted, denied.

36.     These answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph no. 36 of plaintiff's complaint, and those allegations are therefore deemed denied.

37.     It is admitted only that individuals who describe themselves as transgender are stating that they identify as members of the opposite sex.  It is denied that the terms "transgender" and "gender identity" have any definition under, or legal significance for purposes of, Title VII or Title IX.  Except as expressly admitted, denied.

38.     The allegations of paragraph no. 38 state legal conclusions to which no response is necessary.  To the extent a response is deemed necessary, it is admitted only, upon information

and belief, that states have various requirements for altering one's birth certificate. Except as expressly admitted, denied.

39.     The allegations of paragraph no. 39 state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, it admitted that North Carolina law establishes a process for individuals to have the sex reflected on their birth certificates changed. The statute cited by plaintiffs, N.C. Gen. Stat. § 130A-118(b)(4), speaks for itself. Except as expressly admitted, denied.

40.     It is admitted only, upon information and belief, that surgery to change the sex of a child is typically considered inappropriate by medical professionals. These answering defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph no. 40 of plaintiff's complaint, and those allegations are therefore deemed denied.

41.     These answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph no. 41 of plaintiff's complaint, and those allegations are therefore deemed denied.

42.     These answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph no. 42 of plaintiff's complaint, and those allegations are therefore deemed denied.

43.     Denied.

44.     The allegations of paragraph no. 44 state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, it is admitted that the Act generally provides that employees of public agencies in North Carolina are to utilize the restroom and changing facilities designated for their biological sex, if such restroom or changing facility is

11

meant to be utilized by more than one person at a time. It is further admitted that the Act provides for certain exceptions not reflected in the allegations of paragraph no. 44. Except as expressly admitted, denied.

45. Denied.

46. Denied.

47. The allegations of paragraph no. 47 state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, it is admitted that the Act generally provides that restroom and changing facilities operated by the University of North Carolina and its Board of Governors are to be used according to biological sex, if such restroom or changing facility is meant to be utilized by more than one person at a time. It is further admitted that the Act provides for certain exceptions not reflected in the allegations of paragraph no. 47. Except as expressly admitted, denied.

48. Denied.

49. Denied.

50. The allegations of paragraph no. 50 state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, it is admitted that the Act generally provides that restroom and changing facilities operated by DPS, the University of North Carolina, and the University of North Carolina Board of Governors are to be used according to biological sex, if such restroom or changing facility is meant to be utilized by more than one person at a time. It is further admitted that the Act provides for certain exceptions not reflected in the allegations of paragraph no. 50. Except as expressly admitted, denied

51. Denied.

52. Denied.

## CLAIMS FOR RELIEF

### COUNT I

53.     Denied.

54.     Denied.

### COUNT II

55.     Denied.

### COUNT III

56.     Denied.

The State of North Carolina, Governor McCrory, and DPS deny that plaintiff United States of America is entitled to any of the relief sought in its prayer for relief. Each and every allegation of plaintiff's complaint not elsewhere responded to is hereby expressly denied.

### SECOND DEFENSE

Pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, defendants the State of North Carolina, Governor McCrory, and DPS hereby assert the defense of lack of subject-matter jurisdiction and the defense of lack of personal jurisdiction due to the fact that each of the defendants named by plaintiff, as either a state or an arm or instrumentality of the State of North Carolina, enjoys sovereign immunity, that this immunity has never been waived for claims of discrimination based on transgender status, that the states did not surrender this immunity as part of ratifying the Constitution, and that Congress has never abrogated state sovereign immunity for claims of discrimination based on transgender status. Even assuming there has been a purported Congressional abrogation of such immunity, which is denied, this abrogation would not be addressed to remedying a direct violation of rights secured by the Fourteenth Amendment and would thus fail the test of congruence and proportionality under

13

Section 5 of the Fourteenth Amendment. Therefore, any such abrogation would be invalid. Accordingly, plaintiff's complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2).

THIRD DEFENSE

Additionally, Congress lacks the requisite power under the United States Constitution's Commerce Clause to regulate states and/or abrogate state sovereign immunity with respect to how transgender status is best protected under state law. As such, for this reason as well, there exists a lack of subject-matter and personal jurisdiction, and plaintiff's complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2).

FOURTH DEFENSE

Plaintiff's complaint fails to state a claim upon which relief can be granted because gender identity is not a protected class under Title VII or Title IX, and therefore plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The overwhelming weight of authority has refused to expand such protections to transgender status absent Congressional action. In any event, even if transgender individuals were covered by Title VII or Title IX, these answering defendants intend, and are authorized under North Carolina law, to accommodate such individuals. Neither Title VII nor Title IX prohibits balancing the special circumstances posed by transgender individuals with the right to bodily privacy held by non-transgender individuals in the same settings. Title VII in fact allows gender specific regulations in the workplace.

Even if VAWA specifically includes gender identity as a protected class, North Carolina law is not discriminatory because it allows accommodations based on special circumstances, including but not limited to transgender individuals. Moreover, VAWA permits sex-segregation

under certain circumstances so long as the offerings available to each sex are comparable. 42 U.S.C. § 13925(b)(13)(B).

As such, plaintiff's complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Additionally, the State of North Carolina, Governor McCrory, and DPS hereby further assert the defense of failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), for the reasons set forth in the other affirmative defenses enumerated within this answer, which are incorporated herein by reference. Therefore, taken both individually and collectively, the affirmative defenses contained within this answer demonstrate that plaintiff's complaint fails to state a claim upon which relief can be granted, and plaintiff's complaint should therefore be dismissed.

<u>FIFTH DEFENSE</u>

Plaintiff, acting solely through its Federal Executive, has undertaken an effort to redefine the term "sex" as used in Title VII, Title IX, and associated regulations. The Federal Executive's effort to redefine these terms is not valid under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., for the following reasons:

a) The Federal Executive's new definition of the term "sex" is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and thus is unlawful and properly set aside under 5 U.S.C. § 706(2)(A). More specifically, the Federal Executive has failed to explain its reasons for changing the meaning of the term "sex" to include gender identity, failed to consider important aspects of the issue, failed to adhere to the relevant legislative history and other evidence indicating that Congress never intended "sex" to include gender identity, and engaged in other unlawful acts to be demonstrated by the proof in this case;

15

b) The Federal Executive's new definition of the term "sex" is "contrary to constitutional right, power, privilege, or immunity" and thus unlawful and properly set aside under 5 U.S.C. § 706(2)(B). Moreover specifically, defendants' actions, *inter alia*, disregard the separation of powers, violate the constitutionally protected rights of employees, students, and others (including, but not limited to, their Fifth and Fourteenth Amendment rights), rely upon a novel redefinition of statutes in a manner that will have far reaching economic and political consequences, and exceed the powers of the federal government under the Constitution's Spending Clause;

c) The Federal Executive's new definition of the term "sex" is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" and thus unlawful and properly set aside under 5 U.S.C. § 706(2)(C). More specifically, Congress has never delegated to the federal executive the authority to redefine the unambiguous term "sex" as used in the statutes at issue here and has in fact rejected efforts to enact the very redefinition now advanced by the Federal Executive;

d) The Federal Executive's new definition of the term "sex" is "without observance of procedure required by law" and thus unlawful and properly set aside under 5 U.S.C. § 706(2)(D). More specifically, the Federal Executive has not undertaken a proper notice-and-comment process under the APA and has otherwise not properly promulgated its new definition of the term "sex" so as to mean or otherwise include gender identity; and

e) Other reasons that will be established by the proof and argument of the parties.

Accordingly, the Federal Executive has violated the APA, both substantively and procedurally, and its redefinition of the term "sex" to mean or otherwise include gender identity for purposes of Title VII, Title IX, and associated regulations is unlawful. Furthermore, the Federal Executive has not complied with the APA with respect to its reinterpretation of VAWA's non-discrimination provision. Thus, the Federal Executive's actions may be properly set aside by this Court, and plaintiff's complaint should be dismissed.

<u>SIXTH DEFENSE</u>

The judiciary should also accord no deference to the Federal Executive's redefinition of the term "sex" because such action carries with it deep economic and political significance central to Title VII and Title IX. If accepted, the Federal Executive's new definition would overturn the settled interpretation of these laws, under which differentiation on the basis of biological sex has long been permitted in certain contexts, including restrooms, showers, and locker room facilities. Employers, educational institutions, and state and local governments have relied upon such an understanding of these laws and have made significant decisions accordingly. Moreover, there is no basis from which to conclude that Congress assigned to the Federal Executive the task of defining "sex" to mean "gender identity" instead of biological sex. Therefore, the Federal Executive's redefinition of "sex" is invalid and fails as a matter of law. Similarly, the Federal Executive's reinterpretation of VAWA's non-discrimination provision is not entitled to deference and fails as a matter of law because it likewise carries with it deep economic and political significance central to VAWA. Thus, plaintiff's complaint should be dismissed.

## SEVENTH DEFENSE

Additionally, the Federal Executive's redefinition of the term "sex" violates the United States Constitution's separation of powers because the term "sex" as used in Title VII and Title IX is unambiguous and does not mean or include gender identity. No federal executive agency or officer has the authority to redefine unambiguous terms in Title VII or Title IX. If "sex" as used in Title VII or Title IX is to be redefined to mean or otherwise include "gender identity" that action must be undertaken through legislation duly enacted by Congress. Moreover, Congress has never granted any federal executive agency the authority under Title VII or Title IX to proscribe requiring biological males to use one restroom, locker room, shower, or similar such facility and biological females to use another. Accordingly, the definition of the term "sex" adopted by the Federal Executive and used as the premise for its complaint is invalid as a violation of the Constitution's separation of powers. Plaintiff's complaint therefore fails and should be dismissed.

## EIGHTH DEFENSE

The Federal Executive's redefinition of the term "sex" also violates the Spending Clause of the United States Constitution. See U.S. Const. art. I, § 8, cl. 1. The Constitution does not confer upon the federal government the ability to direct states to govern in a particular manner or otherwise commandeer states and their officials for federal purposes. Thus, the federal government is not permitted to use its powers under the Spending Clause to force states to take certain actions, and conditions on spending that threaten states with the loss of significant federal funds must not be so coercive as to amount to unconstitutional compulsion. When the federal government threatens states with the loss of significant federal funds unless they adopt policy changes, such action is unconstitutionally coercive.

18

Additionally, the federal government may not surprise states with post-acceptance or retroactive conditions that the states could not have anticipated at the time they agreed to accept federal funds. The Federal Executive here threatens the State of North Carolina and other states with the loss of significant federal funds unless they accede to this new definition of the term "sex" as used in certain federal laws. These actions are unconstitutionally coercive and amount to commandeering of the states and their officials. The states could not have anticipated that the Federal Executive would introduce a new definition of the term "sex" when they agreed to accept federal funds. Moreover, Congress itself could not have anticipated that the Federal Executive would impose such a new definition when it attached the conditions in the first place.

The Federal Executive's reinterpretation of VAWA's non-discrimination provision also violates the Spending Clause because it is likewise unconstitutionally coercive and constitutes a surprising post-acceptance or retroactive condition that the states could not have anticipated at the time they agreed to accept federal funds under VAWA and that Congress could not have anticipated when it enacted VAWA.

As such, the Federal Executive's actions far exceed the powers conferred by the Spending Clause of the United States Constitution and are invalid. Plaintiff's complaint should therefore be dismissed.

<u>NINTH DEFENSE</u>

The federal government may not compel states to implement federal regulatory programs or related initiatives, and it may not circumvent this constitutional restriction on its authority by addressing its dictates to state officers directly. Nevertheless, the Federal Executive here seeks to commandeer state personnel, along with state property and resources, into a new regulatory regime. This regime would, among other things, force individuals using all manner of state

19

property to share restrooms, showers, and other such facilities with members of the opposite sex. It would necessitate restructuring the operations of state educational institutions, including the manner in which funding is equitably allocated, athletic teams are organized, and student safety is ensured. It would require that correctional institutions be reevaluated to determine how they may comply with these new directives while simultaneously protecting the safety and security of inmates and state employees. And, it would compel state officials to follow a wholly uncharted course in preventing and remedying complaints of sexual harassment throughout state government's day-to-day operations.

Accordingly, because the Federal Executive's actions would result in a commandeering of the states, as well as their personnel and resources, it is unconstitutional, and plaintiff's complaint should be dismissed.

<u>TENTH DEFENSE</u>

The Federal Executive's reinterpretation of Title VII, Title IX, VAWA, and associated regulations will result in violation of fundamental rights protected by the Due Process Clauses of the United States Constitution. "Fundamental rights" under the Due Process Clauses of the Fifth and Fourteenth Amendments are those rights that are deeply rooted in the nation's history and traditions and are implicit in the concept of ordered liberty. The State of North Carolina, Governor McCrory, and DPS have standing to assert these rights on behalf of their citizens and residents.

The Federal Executive's reinterpretation of federal law and the policies now demanded by the Federal Executive in order to implement that reinterpretation infringe upon these fundamental rights. A government may only infringe upon a fundamental right if its actions can satisfy strict scrutiny review. The Federal Executive's actions here, however, cannot satisfy

20

strict scrutiny review. Specifically, the Federal Executive cannot offer a compelling reason for its actions and has also not used the least restrictive means of advancing any such interest it may have relative to its policy. Therefore, the action demanded by the Federal Executive would result in violation of these constitutional rights, and plaintiff's complaint should therefore be dismissed.

ELEVENTH DEFENSE

Plaintiff's complaint should be dismissed because it has not plausibly alleged, nor will the proof in this case establish, any pattern or practice of illicit discrimination by the defendants named herein.

TWELFTH DEFENSE

Plaintiff's complaint should be dismissed because it has not plausibly alleged, nor will the proof in this case establish, that the Act at issue is facially unconstitutional.

**COUNTERCLAIMS**

Defendants/Counterclaim Plaintiffs the State of North Carolina, Governor Patrick L. McCrory, in his official capacity as Governor of the State of North Carolina ("Governor McCrory"), and the North Carolina Department of Public Safety ("DPS") (collectively, "counterclaim plaintiffs") seek declaratory and injunctive relief against the plaintiff/counterclaim defendant United States of America ("United States"). The United States, through its Department of Justice ("the Department"), by letters dated May 4, 2016, threatened legal action against Governor McCrory, DPS, and others, because counterclaim plaintiffs intended to follow North Carolina law requiring public agencies to generally limit use of multiple occupancy bathroom and changing facilities to persons of the same biological sex. The Department contends that North Carolina's common sense privacy policy constitutes a pattern or practice of

discriminating against transgender employees in the terms and conditions of their employment because it does not give employees an unfettered right to use the bathroom or changing facility of their choice based on gender identity. The Department's position is a baseless and blatant overreach. This is an attempt to unilaterally rewrite long-established federal civil rights laws in a manner that is wholly inconsistent with the intent of Congress and disregards decades of statutory interpretation by the Courts. The overwhelming weight of legal authority recognizes that transgender status is not a protected class under Title VII. If the United States desires a new protected class under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., it must seek action from the United States Congress. In any event, North Carolina law allows counterclaim plaintiffs to accommodate transgender individuals while protecting the bodily privacy rights of others, and nothing in Title VII or the Violence Against Women Reauthorization Act of 2013 ("VAWA"), 42 U.S.C. § 13925(b)(13), prohibits such conduct or constitutes discrimination in the terms and conditions of employment of transgender employees or otherwise. Moreover, even if these federal statutes specifically included gender identity as a protected class, the North Carolina legislation at issue is not discriminatory because it allows accommodations based on special circumstances, including but not limited to transgender individuals.

## PARTIES

1.      Defendant/Counterclaim Plaintiff the State of North Carolina asserts these counterclaims by and through its governor, the Honorable Patrick L. McCrory.

2.      Defendant/Counterclaim Plaintiff Patrick L. McCrory ("Governor McCrory") is the Governor of North Carolina. Under North Carolina law, Governor McCrory is the chief executive authority for executive branch agencies within state government. Complying with the

demands made in the Department's letters of May 4, 2016, would prevent Governor McCrory from discharging his obligations under the North Carolina Constitution.

3. Defendant/Counterclaim Plaintiff the North Carolina Department of Public Safety ("DPS") is a state executive branch agency reporting to Governor McCrory. Complying with the demands made in the Department's letters of May 4, 2016, would prevent DPS from discharging its obligations under North Carolina law.

4. Plaintiff/Counterclaim Defendant the United States of America ("United States") has the authority to bring enforcement actions pursuant to Title VII and VAWA.

## JURISDICTION AND VENUE

5. In this action, counterclaim plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq., the Federal Declaratory Judgment Act, and Rule 57 of the Federal Rules of Civil Procedure. The parties dispute whether implementation of North Carolina's common sense bodily privacy law constitutes a violation of Title VII and VAWA. Counterclaim Plaintiffs also seek appropriate injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure and further ask for any relief that may be necessary pursuant to 28 U.S.C. § 1361. This Court may grant counterclaim plaintiffs' request for costs and expenses of the action, including recovery of reasonable attorneys' fees, pursuant to 28 U.S.C. § 2412.

6. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1346, and 28 U.S.C. § 1361.

7. Venue is proper in this District under 28 U.S.C. § 1391(e) because counterclaim plaintiffs have employees in this District and a substantial part of the events and omissions giving rise to the dispute between the parties occurred in this District.

8.     On March 23, 2016, the North Carolina General Assembly enacted the Public Facilities Privacy and Security Act ("the Act"). The Act created common sense bodily privacy protections for, among others, state employees, by requiring public agencies to require multiple occupancy bathroom and changing facilities to be designated for and only used by persons based on their biological sex. Biological sex is the physical condition of being male or female, and the Act notes that such condition is "stated on a person's birth certificate." The Act also allows accommodations based on special circumstances.

9.     On April 12, 2016, Governor McCrory issued "Executive Order 93 to Protect Privacy and Equality" ("EO 93"). EO 93 expanded discrimination protections to state employees on the basis of sexual orientation and gender identity, among others. EO 93 also affirmed North Carolina law that cabinet agencies should require multiple occupancy bathroom and changing facilities to be designated for and only used by persons based on their biological sex. EO 93 further reaffirmed North Carolina law that agencies may make a reasonable accommodation upon request due to special circumstances and directed all agencies to make a reasonable accommodation of a single occupancy restroom, locker room, or shower facility when readily available and when practicable.

10.     On May 4, 2016, the Department asserted in letters to Governor McCrory and DPS Secretary Frank Perry that state law as outlined above constitutes a "pattern or practice" of discriminating against transgender state employees by denying such employees access to the bathroom or other changing facility of their chosen gender identity.

11.     In addition, the Department asserted that the North Carolina Department of Public Safety has violated the non-discrimination provision of VAWA.

12.     The Department further threatened to "apply to [an] appropriate court for an order that will ensure compliance with" the Department's misguided interpretations of Title VII and VAWA.

13.     The Department's threat is real but misplaced.  North Carolina does not treat transgender employees differently from non-transgender employees.  All state employees are required to use the bathroom and changing facilities assigned to persons of their same biological sex, regardless of gender identity, or transgender status.

14.     Moreover, the overwhelming weight of authority has refused to expand Title VII protections to transgender status absent Congressional action.  Courts consistently find that Title VII does not protect transgender or transsexuality *per se*.

15.     In any event, even if transgender employees were covered by Title VII, counterclaim plaintiffs intend, and are authorized under North Carolina law, to accommodate such individuals in the terms and conditions of their employment.  Title VII does not prohibit employers, including state employers, from balancing the special circumstances posed by transgender employees with the right to bodily privacy held by non-transgender employees in the workplace.  Title VII allows gender specific regulations in the workplace.  Similarly, VAWA permits sex-segregation under certain circumstances so long as the offerings available to each sex are comparable.  42 U.S.C. § 13925(b)(13)(B).

16.     Counterclaim Plaintiffs desire to implement state employment policies that protect the bodily privacy rights of state employees in bathroom and changing facilities.  Counterclaim Plaintiffs also desire to accommodate the needs of state employees based on special circumstances, including but not limited to transgender employees.  The United States instead seeks to force counterclaim plaintiffs to implement its reinterpretation of Title VII and

VAWA, while ignoring the bodily privacy of counterclaim plaintiffs' employees. Such action by the United States threatens to expose counterclaim plaintiffs to actual liability under Title VII and VAWA, and other provisions protecting the bodily privacy rights of employees and others.

17. There is an actual controversy between the parties concerning whether counterclaim plaintiffs may follow North Carolina law regarding bathroom and changing facility use.

18. A declaratory judgment will serve a useful purpose in clarifying and settling these legal issues and will afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.

19. Counterclaim Plaintiffs will suffer significant and irreparable harm unless this Court intervenes.

<u>COUNT ONE:</u>
<u>DECLARATION THAT COUNTERCLAIM PLAINTIFFS</u>
<u>ARE IN COMPLIANCE WITH TITLE VII</u>

20. The allegations of paragraphs 1 through 19 are re-alleged and incorporated herein by reference.

21. North Carolina does not treat transgender employees differently from non-transgender employees. All state employees are required to use the bathroom and changing facilities assigned to persons of their same biological sex, regardless of gender identity or transgender status.

22. Therefore, counterclaim plaintiffs respectfully request a declaration that they are not violating Title VII by following state law regarding bathroom and changing facility use by state employees.

<u>COUNT TWO:</u>
<u>DECLARATION THAT COUNTERCLAIM PLAINTIFFS</u>
<u>ARE IN COMPLIANCE WITH VAWA</u>

23. The allegations of paragraphs 1 through 22 are re-alleged and incorporated herein by reference.

24. Even if VAWA specifically includes gender identity as a protected class, North Carolina law is not discriminatory because it allows accommodations based on special circumstances, including but not limited to transgender individuals.

25. Therefore, counterclaim plaintiffs respectfully request a declaration that they are not violating VAWA by following state law regarding bathroom and changing facility use.

**PRAYER FOR RELIEF**

WHEREFORE, the State of North Carolina, Governor Patrick L. McCrory, and the North Carolina Department of Public Safety respectfully request the following relief:

1. That the claims asserted in the complaint filed by the United States of America be dismissed with prejudice;

2. That the State of North Carolina, Governor McCrory, and the North Carolina Department of Public Safety ("counterclaim plaintiffs") receive judgment pursuant to 28 U.S.C. § 2201 declaring that:

   a) Counterclaim Plaintiffs are not violating Title VII or VAWA by following state law regarding bathroom and changing facility use;

   b) Counterclaim Plaintiffs are not violating Title VII or VAWA by following state law allowing accommodations under special circumstances for employees and others who need exceptions to state policy regarding bathroom and changing facility use;

c) Counterclaim Plaintiffs are not in violation of Title VII or VAWA;

d) Counterclaim Plaintiffs cannot be denied federal funds for following state law regarding bathroom and changing facility use; and

e) This dispute is resolved in favor of counterclaim plaintiffs such that they do not have to incur damages in the form of back pay, front pay, benefits, liability, or other similar or associated costs.

3. That the State of North Carolina, Governor McCrory, and the North Carolina Department of Public Safety be granted appropriate injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure;

4. That, pursuant to 28 U.S.C. § 1361, the State of North Carolina, Governor McCrory, and the North Carolina Department of Public Safety be granted appropriate relief in the nature of mandamus compelling officers, employees, and agencies of the United States to perform the duties owed to the State of North Carolina, Governor McCrory, and the North Carolina Department of Public Safety;

5. That the State of North Carolina, Governor McCrory, and the North Carolina Department of Public Safety recover their fees and costs in this matter, including attorneys' fees, as allowed by law;

6. That the costs of this action be taxed to the United States of America; and

7. That the State of North Carolina, Governor McCrory, and the North Carolina Department of Public Safety have such other and further relief as the Court may deem just and proper.

Respectfully submitted, this the 2nd day of June, 2016.

BOWERS LAW OFFICE LLC

By: /s/ Karl S. Bowers, Jr.
Karl S. Bowers, Jr.*
Federal Bar #7716
P.O. Box 50549
Columbia, SC 29250
Telephone: (803) 260-4124
E-mail: butch@butchbowers.com
*appearing pursuant to Local Rule 83.1(d)
*Counsel for the State of North Carolina, Governor Patrick L. McCrory, and the North Carolina Department of Public Safety*


MCGLINCHEY STAFFORD

By: /s/ Robert N. Driscoll
Robert N. Driscoll*
1275 Pennsylvania Avenue NW
Suite 420
Washington, DC 20004
Telephone: (202) 802-9950
Facsimile: (202) 403-3870
E-mail: rdriscoll@mcglinchey.com
*appearing pursuant to Local Rule 83.1(d)
*Counsel for the State of North Carolina, Governor Patrick L. McCrory, and the North Carolina Department of Public Safety*


By: /s/ Robert C. Stephens
Robert C. Stephens (State Bar #4150)
General Counsel
Office of the Governor of North Carolina
20301 Mail Service Center
Raleigh, NC 27699
Telephone: (919) 814-2027
Facsimile: (919) 733-2120
E-mail: bob.stephens@nc.gov
*appearing as Local Rule 83.1 Counsel
*Counsel for the State of North Carolina and Governor Patrick L. McCrory*

MILLBERG GORDON STEWART PLLC

By: /s/ William W. Stewart, Jr.
William W. Stewart, Jr. (State Bar #21059)
Frank J. Gordon (State Bar #15871)
B. Tyler Brooks (State Bar #37604)
1101 Haynes Street, Suite 104
Raleigh, NC  27604
Telephone: (919) 836-0090
Fax:  (919) 836-8027
Email: bstewart@mgsattorneys.com
        fgordon@mgsattorneys.com
        tbrooks@mgsattorneys.com
*Counsel for the State of North Carolina, Governor Patrick L. McCrory, and the North Carolina Department of Public Safety*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participating attorneys.

This the <u>2nd</u> day of June, 2016.

By: <u>/s/ William W. Stewart, Jr.</u>
William W. Stewart, Jr. (State Bar #21059)
*Counsel for the State of North Carolina, Governor Patrick L. McCrory, and the North Carolina Department of Public Safety*
MILLBERG GORDON STEWART PLLC
1101 Haynes Street, Suite 104
Raleigh, NC 27604
Telephone: (919) 836-0090
Fax: (919) 836-8027
Email: bstewart@mgsattorneys.com