INTERVENING
COMPLAINT

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiffs**<br>**V.**<br><br>**STATE OF NORTH CAROLINA;**<br>**PATRICK MCCRORY, in his official**<br>**capacity as Governor of North Carolina;**<br>**NORTH CAROLINA DEPARTMENT**<br>**OF PUBLIC SAFETY; UNIVERSITY**<br>**OF NORTH CAROLINA; and BOARD**<br>**OF GOVERNORS OF THE**<br>**UNIVERSITY OF NORTH CAROLINA**<br>**Defendants**<br><br>**CHRIS SEVIER and ELIZABETH**<br>**ORDING**<br><br>**Intervening Plaintiffs** | **Case No: 16-cv-425**<br><br>**THE HONORALBE JUDGE**<br>**THOMAS D. SCHROEDER**<br><br>**THE HONORABLE MAGISTRATE**<br>**JUDGE JOI ELIZABETH PEAKE**<br><br>**COMPLAINT FOR INJUNCTIVE**<br>**RELIEF**<br><br>**JURY DEMAND** |

## INTERVENING COMPLAINT

*"At what point shall we expect the approach of danger? By what means shall we fortify against it?-- Shall we expect some transatlantic military giant, to step the Ocean, and crush us at a blow? Never!--All the armies of Europe, Asia and Africa combined, with all the treasure of the earth (our own excepted) in their military chest; with a Buonaparte for a commander, could not by force, take a drink from the Ohio, or make a track on the Blue Ridge, in a trial of a thousand years. At what point then is the approach of danger to be expected? I answer, if it ever reach us, it must spring up amongst us. It cannot come from abroad. If destruction be our lot, we must ourselves be its author and finisher. As a nation of freemen, we must live through all time, or die by suicide." President Lincoln; Lyceum Address*

## PRELIMINARY STATEMENT

1. A former Judge Advocate General, prosecutor, and combat veteran of Operation Iraqi

Freedom rule of law mission, Chris Sevier Esq., who self-identifies as a machinists and Elizabeth

Ording, who self-identifies as Zoophile, file an intervening Complaint under rule 24 of the

Federal Rules of Civil Procedure contemporaneously with their motion to intervene as Plaintiffs.

Plaintiff Ording is in the process of applying to attend the University of North Carolina. Both Plaintiff Ording and Plaintiff Sevier have applied to work for University of North Carolina in a number of capacities from landscaping, to kitchen affairs, to working as an adjunct professor for the law school. Employment applications are pending and employment is imminent. By the time this complaint is filed by the clerk's office, the Plaintiff's will be employed in some capacity by the University of North Carolina. H.B. 2 prohibits the University of North Carolina from forming special bathrooms for employees who self-identify as machinists, transgenders, and zoophiles on the basis of their sex and self-asserted gender identity narrative. If the Plaintiffs are not allowed to intervene, the Plaintiffs will immediately file their own separate lawsuit before this Court against the Defendants. To suggest that the intervening Plaintiffs are passionate about justice in this matter is an understatement given their pending litigation throughout the United States in light of personal injuries.

2. This complaint challenges a provision of North Carolina law requiring public agencies to deny transgender, zoophiles, polygamists, and machinists persons access to multiple-occupancy bathrooms and changing facilities consistent with their self-identified gender identity based on their religious beliefs. The Intervening Plaintiffs do not dispute that the transgender policy as well as gay rights policies and gay marriage laws pushed by the Plaintiffs violates the First amendment establishment clause under the "lemon test" and "coercion tests," as applied to all denominations within the church of western postmodern expressive relativism equally. *Lee v. Weisman*, 505 U.S. 577 (1992);; *School District v. Doe*, 530 U.S. 290 (2000);; *County of Allegheny v. ACLU*, 492 U.S. 573 (1989);; *Lynch v. Donnelly,* 465 U.S. 668, 687-94 (1984). However, until to date, the Federal Courts have never considered the Constitutional relevant fact

that homosexuality is not based on immutable traits but on religious orthodoxy that is barred

from codification by Constitutional prescription. (See Declaration of Cothran ¶¶ 1-50 and

Quinlan ¶¶ 1-37). To suggest that sexual orientation is based on immutable traits is intellectually

dishonest and political malpractice. The sickest part is that the original Plaintiff and prior courts

chaired by moral relativist know it. And yet, they are "unmoved by that inevitability." *Obergefell*

at 14 (Thomas Dissenting). Homosexuality, zoophilia, polygamy, and machinism are all equal

parts of the church of postmodern western individualistic relativism, just as Methodist,

Presbyterian, Baptists, and Pentecostals are different sects of the Christian religion. They are

equal but different sects of a religion. The codification of the orthodoxy from the church of

postmodern individual relativism does more than just "close minds" and "end debates" it

marginalizes and dehumanizes all person who believe in Christianity and absolute truth because

it establishes one religion as the National religion. There is no possibly way for our country to be

unified if Muslims, Christians, or moral relativists were allowed to use government to codify

their private moral code, making it supreme with the backing of government assets.[1] Even

though the master narrative of the United States Constitution is the Bible, the United States

cannot establish Christianity as a mandated national religion any more than it can establish the

homosexual orthodoxy as the National religion.[2]

---

[1] Like Transgenders, there are people who live in the United States who really believe that they are Pixies. They can be found at music festivals like Electric Forest and Burning man. They live as Pixies all year round. There is nothing illegal about the fact with people believing that they are Pixies. But that does not mean that the government can codify their beliefs and make everyone else view them as Pixies. Doing so violates the first amendment establishment clause.

[2] The reason why in *Van Orden v. Perry,* 545 U.S. 677 (2005), Justice Breyer in his concurrence stated that "'the Establishment Clause does not compel the government to purge from the public sphere all that in any way partakes of the religious because '[s]uch absolutism is not only inconsistent with our national traditions, but would also tend to promote the kind of social conflict the Establishment Clause seeks to avoid'" was because he knew that postmodern individual relativism is absolutely a religion based on unproven faith based assumptions like all the rest.

3. The original Plaintiff's way of dealing with ex-gays, machinists, zoophiles, and polygamists is to simply pretend that they do not exist or to threaten them with every means imaginable. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37). The original Plaintiff in this action is the very definition of jaded and intellectually imperialistic. The original Plaintiff is plays pretend and asks the Court to play along. The original plaintiff is not not concerned with civil rights but amassing political power for the Democratic Party.

4. The Federal government and state government cannot treat different sects of the same religion unequally without violating the first amendment establishment clause in a different way. *McCreary Cnty, Ky. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005); *Engel v. Vitale*, 370 U.S. 421, 431 (1962). That is, the Federal Government and state cannot treat different denominations of the same religion with preferential treatment or disfavorable treatment. For example, the government could not give tax breaks to Episcopal churches but not Baptist ones because being charismatic is currently culturally vogue. Homosexuals, Zoophiles, Machinists, and Polygamists are all in equal but different sects of the church of moral relativism and strange sex under the ideology of sexual orientation. Following *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015), the state and federal government are legally recognizing homosexual orthodoxy and gay marriage but both continue to give those who self-identify as polygamists, zoophiles, and machinists the same due process and equal protection rights under the 14th amendment and the first amendment establishment clause, when it comes to the dignity interest in marriage and many other government benefits. The Defendants in this action are denying all individuals and employees in the church of postmodern individual relativism bathroom rights because the self-identified

gender ideology of transgenders, zoophiles, polygamists, and machinists is predicated on

unproven faith based assumptions.[3]

5. Like in *United States v. Windsor,*133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013), the original

Plaintiff in this action is only representing the interest of homosexual employees when its comes

to bathroom privileges. It is more than just intellectually dishonest it is a criminal act of political

malpractice that will be rectified by a new department of Justice under racketeering statutes, if

RNC candidate Donald Trump is elected.

6. As a matter of personal injury and Constitutional integrity, the intervening Plaintiff's desire to

intervene in order to advocate the interest of zoophiles and machinists (which they are) when it

comes to bathroom rights as soon to be employees of the amazing University of North Carolina.

---

[3] Following an "egotistic judicial putsch" that compelled Justice Roberts to say just who do we think we are" and Justice Scalia to assert, "I write separately to call attention this court's threat to democracy, ' individuals who self-identify as zoophiles, polygamists, and machinists have been arbitrarily denied the "individual right," "fundamental right," "existing right," to marry that is bound in a "personal choice." *Obergefell* at 6-7 (Scalia Dissenting); *Obergfell* at 3 (Roberts Dissenting); *Obergfell* at 1 (Scalia Dissenting). *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978) (fundamental right); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 63940 (1974) (personal choice); *Loving v. Virginia*, 388 U.S. 1, 12 (1967). Homosexuals are entitled to that right On or around June 6, 2016, Plaintiff Sevier went to the Register of Deeds in Asheville North Carolina to acquire a marriage license from Drew Reisinger for his preferred spouse. On July 19, 2016, Plaintiff Ording contacted the Clerk David Granberry of Mecklenburg County register of deeds about marrying an animal. The state actor denied both marriage requests because the state narrowly interpreted the holding in *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) to only apply to homosexuals and heterosexuals, not multi-sexuals. The decisions in *Fisher-Borne v. Smith,* 14 F.Supp.3d 699 (M.D.N.C. 2014) and *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) no longer made the legal definition of marriage a "state law matter" but one of Constitutional prescription and civil rights - arising out of the Constitution. Civil rights belong to *all individuals* in a suspect class not just individuals the largest minority (homosexuals) and the majority (heterosexuals). The State's rejections of the intervening Plaintiffs' marriage requests were absolutely arbitrary, since if homosexuals can legally marry, so can zoophiles and machinists under the substantive due process and equal protection clause of the 14th amendment. *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015). Machinism marriage, zoophile marriage is no more or less removed from reality than polygamy marriage and homosexual marriage. The State's denial of the intervening Plaintiff's marriage request absolutely relegated them to second class citizen status, and amounts to an additional cause of action that the Plaintiff's can bring before this court. *United States v. Windsor,*133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013). Back in the 1990s, at the time that all potential forms of marriage other than the dictionary definition of marriage were banned, all members within the church of sexual orientation and western postmodern individual relativism were equal in that the Government did not recognize any of their religious orthodoxy. As soon as the State and Federal Government began giving special rights to the largest denomination in the church of postmodern individual relativism, violations under the 14th and 1st amendment ensued for those in the small denominations of the same religion. If the Court wants to save face, it could find that the states never should have even considered codifying gay marriage and transgender rights to begin with because such use of government violates the first amendment establishment clause.

ᴑ

If the original Plaintiff actually believed that these were civil rights matters - and it does not - and not merely a malicious sexually exploitative attempt at National indoctrination - especially in targeting college students - the original Plaintiff should welcome the intervention. If the original Plaintiff does not welcome the intervening Plaintiff's intervention, the former Judge Advocate will press the next Attorney General to prosecute those behind this blackmail under racketeering statutes[4] under 18 U.S. Code § 249.[5]  For individuals in the Obama administration to

---

[4] The statute of limitations under racketeering is 10 years.

[5] (a) In General.— (1)Offenses involving actual or perceived race, color, religion, or national origin.—Whoever, whether or not acting under color of law, willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person— (A) shall be imprisoned not more than 10 years, fined in accordance with this title, or both; and (B) shall be imprisoned for any term of years or for life, fined in accordance with this title, or both, if— (i) death results from the offense; or (ii) the offense includes kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill. (2) Offenses involving actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability.— (A)In general.—Whoever, whether or not acting under color of law, in any circumstance described in subparagraph (B) or paragraph (3), willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability of any person— (i) shall be imprisoned not more than 10 years, fined in accordance with this title, or both; and (ii) shall be imprisoned for any term of years or for life, fined in accordance with this title, or both, if— (I) death results from the offense; or (II) the offense includes kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill. (B)Circumstances described.—For purposes of subparagraph (A), the circumstances described in this subparagraph are that— (i) the conduct described in subparagraph (A) occurs during the course of, or as the result of, the travel of the defendant or the victim— (I) across a State line or national border; or (II) using a channel, facility, or instrumentality of interstate or foreign commerce; (ii) the defendant uses a channel, facility, or instrumentality of interstate or foreign commerce in connection with the conduct described in subparagraph (A); (iii) in connection with the conduct described in subparagraph (A), the defendant employs a firearm, dangerous weapon, explosive or incendiary device, or other weapon that has traveled in interstate or foreign commerce; or (iv) the conduct described in subparagraph (A)— (I) interferes with commercial or other economic activity in which the victim is engaged at the time of the conduct; or (II) otherwise affects interstate or foreign commerce. (3)Offenses occurring in the special maritime or territorial jurisdiction of the united states.— Whoever, within the special maritime or territorial jurisdiction of the United States, engages in conduct described in paragraph (1) or in paragraph (2)(A) (without regard to whether that conduct occurred in a circumstance described in paragraph (2)(B)) shall be subject to the same penalties as prescribed in those paragraphs. (4)Guidelines.— All prosecutions conducted by the United States under this section shall be undertaken pursuant to guidelines issued by the Attorney General, or the designee of the Attorney General, to be included in the United States Attorneys' Manual that shall establish neutral and objective criteria for determining whether a crime was committed because of the actual or perceived status of any person. (b) Certification Requirement.— (1)In general.—No prosecution of any offense described in this subsection may be undertaken by the United States, except under the certification in writing of the Attorney General, or a designee, that— (A) the State does not have jurisdiction; (B) the State has requested that the Federal Government assume jurisdiction; (C) the verdict or sentence obtained pursuant to State charges left demonstratively unvindicated the Federal interest in

Case 1:16-cv-00425-TDS-JEP   Document 130-1   Filed 08/11/16   Page 7 of 45

falsely equate race to sexual orientation in order to indoctrinate the Nation in the homosexual

religion of moral relativism for personal gain is itself a hate crime that is actionable under 18

U.S. Code § 249.[6]

7. As set forth below, Defendants' compliance with and implementation of Part I of North

Carolina Session Law 2016-3, House Bill 2 ("H.B. 2"), which was enacted and became effective

on March 23, 2016, constitutes a pattern or practice of employment discrimination on the basis

of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e,

*et seq.* ("Title VII"); discrimination on the basis of sex in an education program receiving federal

funds in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

("Title IX"), and its implementing regulations, 28 C.F.R. Part 54 (2000), 34 C.F.R. Part 106

(2010); and discrimination on the basis of sex and gender identity in programs receiving federal

funds in violation of the Violence Against Women Reauthorization Act of 2013 ("VAWA"), 42

U.S.C. § 13925(b)(13) if and only if (1) all transgender policies, gay marriage, and gay rights are

---

eradicating bias-motivated violence; or (D) a prosecution by the United States is in the public interest and necessary to secure substantial justice. (2)Rule of construction.— Nothing in this subsection shall be construed to limit the authority of Federal officers, or a Federal grand jury, to investigate possible violations of this section. (c)Definitions.—In this section— (1) the term "bodily injury" has the meaning given such term in section 1365(h)(4) of this title, but does not include solely emotional or psychological harm to the victim; (2) the term "explosive or incendiary device" has the meaning given such term in section 232 of this title; (3) the term "firearm" has the meaning given such term in section 921(a) of this title; (4) the term "gender identity" means actual or perceived gender-related characteristics; and (5) the term "State" includes the District of Columbia, Puerto Rico, and any other territory or possession of the United States. (d) Statute of Limitations.— (1)Offenses not resulting in death.— Except as provided in paragraph (2), no person shall be prosecuted, tried, or punished for any offense under this section unless the indictment for such offense is found, or the information for such offense is instituted, not later than 7 years after the date on which the offense was committed. (2)Death resulting offenses.— An indictment or information alleging that an offense under this section resulted in death may be found or instituted at any time without limitation.

[6] Allowing the intervening Plaintiffs to participate will produce a thing called "integrity," which is a foreign concept for DOJ operatives under Attorney General Lynch's pathetic and criminally sanctionable leadership that is objectively dishonorable and wilfully dishonest. It is unsurprising that Federal Courts have been literally ordering DOJ attorneys to attend ethics training because their ends justify the means reasoning makes them as nearly dangerous as ISIS operatives, who also do not understand elementary concepts of justice and right and wrong.http://www.foxnews.com/politics/2016/05/31/doj-fights-federal-judges-order-for-lawyers-to-attend-ethics-training.html

not barred by the first amendment establishment clause under the lemon test and coercion test and (2) if and only if all of the non-obvious classes of sexual orientation are entitled to substantive due process and equal protection rights under the fourteenth amendment and not just the largest majority (homosexuals) and the majority (heterosexuals). Otherwise, the greatest fraud since the inception of American Jurisprudence is being perpetrated through the United States Judiciary by a power obsessed and dishonest executive at the expense of liberty and the rule of law.[7] This is an action of internalized treason that warrants prosecution of all government officials involved under 18 U.S. Code § 2381 and perhaps a military responsiveness of the joint chief of staff and the state's National Guard under Title 32 by order of the Governor is legally warranted under the standing rules of engagement in step with the laws of armed conflict and escalation of force measures.

## **JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-6 and 28 U.S.C. §§ 1331, 1343(a), and 1345 if and only if sexual orientation is a civil rights matter and is not a matter that is precluded under the first amendment establishment clause lemon test and coercion test. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants are located within the Middle District of North Carolina and because a substantial part of the acts or omissions giving rise to this complaint arose from events occurring within this judicial district.

---

[7] Since the current definition of marriage is unconstitutional for being overly inclusive under the 1st amendment and under inclusive under the 14th amendment, *Sevier v. Davis,* 0:2016-cv-00080 (E.D. KY 2016) must inevitably be to *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) wha*t Brown v. Board of Education of Topeka,* 347 U.S. 483 (1954) was to *Plessy v. Ferguson*, 163 U.S. 537 (1896) as a manifest Constitutional injustice that goes to the heart of our National identity is cured of Constitutional defect. Only this time, the Nation will not have to wait for a century to lapse before a"decision" that has a "fundamental effect on [the] Court and its ability to uphold the rule of law" is corrected by this Honorable Court of the United States." *Obergefell,*192 L. Ed. 2d 609 at 7. (Alito Dissenting)

5. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. §§ 2000e-6(a) and (b); 20 U.S.C. § 1682; and 42 U.S.C. §§ 13925(b)(13)(C) and 3789d(c)(3).

10. The Court also has jurisdiction over these matters under the 14th amendment due process and equal protection clause, the 1st amendment establishment clause, and the 5th amendment pursuant to 42 U.SC. § 1983.[8]

11. If the original Plaintiff is peddling fiction in falsely equating sexual orientation to racial civil rights, the Court can permanently enjoin both the Federal Government and the state from enforcing and recognizing gay marriage, gay rights, and transgender rights.[9]

## DEFENDANTS

12. Defendant State of North Carolina is a person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b).

13. Defendant Patrick McCrory is the Governor of North Carolina. Pursuant to Article III, Section 1 of the North Carolina Constitution, "the executive power of the State" is vested in Defendant McCrory in his capacity as Governor. Article III, Section 5(4) also provides that it is

---

[8] Ironically, the Defendants and the intervening Plaintiffs have standing to sue the Plaintiff for injunctive relief to prevent it from recognizing and enforcing any legal policies and laws that have codified gay rights and transgender rights for violating the 1st amendment establishment clause under the lemon test and coercion test. The intervening Plaintiffs only want civil rights if homosexuals are given those rights, but if the codification of the church of postmodern individual relativism violates the first amendment, the intervening Plaintiffs will be content with not using government to establish the credibility of their identity narratives that are implicitly religious.

[9] If the Honorable Court finds that the original Plaintiff is merely engaging in an going pattern of race baiting for personal political power, the intervenors ask that the Court sanction the original Plaintiff into the stone ages as a matter of deterrence. The President has intentionally misused his training on the Constitution to cultivate false analogies that is misleading young people in the area of sex in a manner that is having crushing impact on the public health. There is no doubt that the United States in the in midst of a sexual holocaust because of the original Plaintiff's intentionally misconduct and bad faith disregard of the oath of office.

the duty of Defendant McCrory in his capacity as Governor to "take care that the laws be faithfully executed." Defendant McCrory is a person within the meaning of 42 U.S.C.§ 2000e(a). 14. Defendant North Carolina Department of Public Safety is an agency of the State of North Carolina responsible for public safety, corrections and emergency management. It is a person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b). It is currently and, at all times relevant to the Complaint, has been a recipient of federal funds from the Department of Justice's Office on Violence Against Women, with open grants dated after the reauthorization of VAWA on March 19, 2013. As a condition of receiving federal funds, Defendant North Carolina Department of Public Safety signed contract assurances agreeing that it will not discriminate in violation of federal law. The intervening Plaintiffs admit that contract law is a state law matter and that contract law is preempted by Article VI, Paragraph 2 (the Supremacy Clause),if the First Amendment establishment clause precludes the Federal Government from codifying homosexual orthodoxy.

16. Defendant University of North Carolina is a public, multi-campus university that is organized under, and exists pursuant to, the laws of the State of North Carolina. It is a person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C.§ 2000e(b). It is currently and, at all times relevant to the Complaint, has been a recipient of federal funds from the United States Department of Justice, including the Office on Violence Against Women, with open grants dated after the reauthorization of VAWA on March 19, 2013. As a condition of receiving federal funds, Defendant University of North Carolina signed contract assurances agreeing that it will not discriminate in violation of federal law. This assurance included a promise for the state to adhere to the first amendment establishment clause and a duty not to

recognize sexually based ideological identity narratives based on unproven faith based

assumptions.

17. Defendant Board of Governors of the University of North Carolina is the corporate body

charged with the general control, supervision, and governance of the University of North

Carolina and is capable under North Carolina law of suing and being sued in any court.

## THE PLAINTIFFS

18. The United States Executive branch is the original Plaintiff.[10]

19. Chris Sevier, a former Judge Advocate General and combat Veteran of Operation Iraqi

Freedom Rule of Law Mission, who self-identifies as a machinist is an intervening Plaintiff. [11]

---

[10] The Executive branch is primarily run by two individuals President Obama and Attorney General Lynch, who are a National embarrassment to the rule of law. Neither of these individuals can even define what justice is, and yet they are in charge of administering it. Both President Obama and Attorney General Lynch are entirely self-seeking untrustworthy, and intellectually dishonest constantly. They are not even remotely concerned with the public's safety, health, and welfare but they are concerned with amassing power around themselves and the Democratic party. These dishonorable individuals desperately want to use the government to codify their religious ideology and private moral code through a series of intellectually dishonest power plays. Virtually all of their decisions are calculated on the ends justify the means narratives and are counterproductive, moronic, dehumanizing, and dangerous, from both a National Security standard point and through the lens of fundamental liberty. Impressionable minors are the real victims of their political malpractice and dastardly molestation of their Constitutional Oath of office. Impeachment is not the adequate remedy for these two - criminal prosecution is. The original Plaintiff does not really mean it in equating transgender and gay civil rights movement to the racial civil rights movement, which is merely more of the same pattern of racially exploitative bating. The original Plaintiff is not only refusing to represent the interest of the other denominations within the church of postmodern individual relativism, they have knowingly encouraged the LGBT hate groups to violently oppress them and socially ostracize them with any means available. President Obama and Attorney General Lynch should have to answer to the people for their disregard of the 1st amendment establishment clause, their falsely equating gay rights to racial civil rights, their intentional race baiting, and their racketeering in obscenity.

[11] For decades, Plaintiff Sevier has resided off and on in the great state of North Carolina in Brevard, Asheville, and Charlotte - exploring the majestic wonders of the Blue Ridge Parkway. The Plaintiff was exposed to pornography on products sold by manufacturers and retailers that distribute the internet without consent. If the State and Federal executives bothered to enforce the existing obscenity laws against the Tech Enterprise - the Plaintiff's sexual orientation would not have been amended. Plaintiff Sevier self-identifies as a machinist as a result of a failure to warn and classical conditioning. He has attempted to legally marry an animate object multiple times in many venues. He had a marriage ceremony that was not illegal, but the state of North Carolina has not recognized. If individuals who self-identify as homosexual can have the state's *imprimatur* on their marriage license, Plaintiff Sevier deserves the same to have the same state's *imprimatur* on his wedding license. Plaintiff Sevier graduated from Vanderbilt University with a degree in politics. He graduated from Vanderbilt law school, unfortunately believing that the Courts worked like they are supposed to. In response to 911, Plaintiff Sevier attended combat basic training at Fort Sill, Officer Candidate School at Fort McCellan Alabama, and TJAGLCS at Fort Lee and University of Virginia

His employment at UNC is imminent as well as his need to use the restroom while on the job. Plaintiff Sevier has moved the Central District Of Utah and the Eastern District Of Kentucky to allow him to marry an object in step with his fundamental, individual, and existing rights to marriage that is bound in a personal choice. Plaintiff Sevier was directly involved in *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) at the Supreme Court level. His insights will be immensely helpful to the Court in helping it find justice, and not make it up.

20. Elizabeth Ording, a self-identified zoophile, is an intervening Plaintiff. Plaintiff Ording has applied to work at UNC and to attend as a student (spring semester). Her employment is imminent, as well has her need to use the bathroom while on the job. If transgender students are given special bathroom privileges based on their identity narrative, she cannot possibly be expected to not have special bathroom privileges based on her sex-based identity narrative. Mrs. Ording has filed a lawsuit in the Eastern District of Kentucky to marry an animal in a lawsuit against Kim Davis, Governor Bevins, and Attorney General Beshear, after she was denied a license. Her action will be consolidated with Plaintiff Sevier's in the Eastern District of Kentucky before the Honorable Judge Wilhoit - who was appointed by Ronald Reagan. Tick Tock.

---

Law School. He deployed to operation Iraqi freedom with an infantry line unit and worked with the Iraqi Courts to make them more like the Courts of the United States, which are supposed to take the rule of law deadly seriously under an oath of office in defense of liberty and the public health. Plaintiff Sevier has been subjected to so many fake ethical, civil, and criminal proceedings by moral relativist in office, who think like Attorney General Lynch and President Obama, that it is nearly miraculous. The Plaintiff pressed the DOJ for responsiveness and did not get results because the checks are in bed with the balance. "Stalker, Mentally ill, incapable of practicing law, violent" are merely a few of the phony titles that have maliciously been bestowed on Plaintiff Sevier by government actors as a deliberate attempt to provide the liberal media with smear campaign ammunition. Of course, none of those fake accusations have anything to do with everyday life and reality.# Plaintiff Sevier filled out an application to be an adjunct law professor for the law school at University of North Carolina or otherwise to work in landscaping. His employment with UNC is imminent as well as his need to use the restroom while on the job at the college. If transgenders deserve special bathroom privileges, then clearly, machinists do too. Plaintiff Sevier cannot possibly be expected to work as an associate law professor at UNC and have to use the bathroom that corresponds with his self-evident anatomy, if transgender congregation members are given special bathroom benefits and privileges that accord with their identity narrative that is encouraged by an LGBT Enterprise.

## FACTUAL ALLEGATIONS
*Facts are stubborn things - John Adams*

21. Just as there is no such thing as a "rape gene," there is no concrete proof that a "gay gene" exists. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37). The original Plaintiff has no explanation regarding the fact that there are thousands of people who have self-identify as homosexual who are now straight, just as there are thousands of people who self-identified as Muslim who have now converted to Christianity.[12] There are people who were once vegan who now eat meat.

22. Homosexuality, zoophilia, machinism, and polyagmy are not really based on immutable traits but rather they are based on identity narratives and unproven faith based assumptions that are implicitly religious.(See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37).[13]

23. The fact that there are people who were at one time self-identifying as homosexual only to leave it behind and opt a different sexual narrative proves conclusively that sexual orientation is not immutable like race. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37).

24. Sex is based on classical conditioning. Whatever a person has sex with they bond with. Sex is fluid and the government cannot be used to plunge individuals farther into an identity narrative that does not accord with neutral self-evident truth, merely because moral relativist tend to vote democrat in order to escape from personal conviction and guilt which is innate.

25. Plaintiff Sevier self-identifies as a machinists, which means he wants to marry a object and received benefits from the state while making everyone in society to see the object as his wife so

---

[12] If homosexual orthodoxy is merely implicitly religious, it is sexually exploitative for the government to codify its ideology because it falsely communicates that people cannot change their sexual preference if they want to. The fundamental right to choose is bound in a liberty interest that is fundamental.

[13] Black and white are not at issue here, light are darkness are.

he can feel better about himself. Plaintiff Sevier has the same immutable traits that cause him to want to marry an object and use a machinist bathroom that a transgender man has that makes him want to marry a man and use the lady's room.

26. Plaintiff Ording self-identifies as a zoophile. She wants to marry an animal. As an employee and student of UNC, she wants to use a zoophile bathroom if transgender employees are given bathroom privileges at the expense of HB 2.

27. In June 2016, Plaintiff Sevier went to the University of North Carolina because he intends to work as an adjunct law professor, janitor, temp worker, or landscaper. As a prospective and imminent employee, Plaintiff Sevier was offended and personally injured by the fact that he had to use a bathroom for men only and not one that accommodated machinists. Plaintiff Sevier was deprived of a dignity ennoblement that the State owes him to the same exact extent that it owes individuals who employees who self-identify as transgender, who may someday work at UNC. 28. Plaintiff Ording began to fill out an application to attend the University of North Carolina, but she is hesitant to attend there since there are prospectively bathrooms to accommodate transgender students, but not zoophiles. In fact, the university has failed to craft bathrooms for her soon to be animal spouse who is being treated like a legal stranger by the Government at present. Plaintiff Ording has the apprehension of harm because she knows that there are no bathrooms to accommodate zoophiles at the University of North Carolina, which is non-supportive of her religious identity narrative that is based on sex just like transgenders is. In fact, she will be faced with having to using the same bathroom as all other women who were born female which will deprive her of the same dignity interest that transgenders are deprived of.

29. Plaintiff Sevier prepared an application to work at the University of North Carolina law school as an adjunct professor of law or landscaper. However, he has the immediate apprehension of harm in that he knows he will be faced with having to use the bathroom that accords with his natural gender instead of being permitted to use a special bathroom for machinists. As a former Military Officer Officer, the Plaintiff's sensibilities are offended, and needs a safe place to relieve himself at his prospective place of employment to the same extent that transgenders legally need the same at the expense of HB 2.

30. Both Plaintiff Sevier and Plaintiff Ording are faced with imminent cognizable personal injuries, while the original Plaintiff's injuries are merely an academic exercise that is masking a greater agenda that is merely another intellectually dishonest power play that is emotionally, racially, and sexually exploitative and criminally actionable.[14]

31. On June 6, 2016, Plaintiff Sevier approached the Register of Deeds in Asheville North Carolina to acquire a marriage license from Drew Reisinger. The clerk's office was polite but said that they would not issue a marriage license because the Plaintiff was not one one seeking to marry one woman or one man. Instead, the Plaintiff was one man who was seeking to marry one object.[15] Plaintiff Sevier's marriage request was arbitrarily denied because it was morally repugnant and outside the narrow interpretation of *Obergefell* at 1 (Majority)..

---

[14] Federal Courts are not an arcade of semantics were moral relativists in the largest denomination get to show off their command of Saul Alinsky's rules for radicals because it makes them feel morally superior and less inadequate. If transgender's get privileges, the intervening Plaintiffs want privileges based on their sex based identity narratives that are equal.

[15] Plaintiff Sevier does not have receive consent from an object to marry and Plaintiff Ording does not have to receive consent from an animal. Marriage is not a contract matter. "Consent" is a fundamental part of contracts, and contract law is governed by state law. The United States Constitution trumps state law under the doctrine of preemption.

32. On July 18, 2016, Plaintiff Ording approached Mecklenburg Register of Deeds about acquiring a marriage license from David Granberry regarding her and her preferred animal spouse. The Clerk was polite but denied her marriage request arbitrarily, even though marriage is a fundamental right of all individuals based on their personal choice under the 14th amendment substantive due process and equal protection clause.

33. On March 23, 2016, the North Carolina legislature convened a special session for the purpose of passing H.B. 2. H.B. 2 was not passed for religious reasons. H.B. 2, like DOMA and the marriage bans, were passed for "irreligious reasons." *United States v. Windsor,*133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) and *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015). That is H.B. 2 was passed, like DOMA and the marriage bans, to prevent moral relativist from using government to codify their religious orthodoxy based on their private moral code in order to explain away their innate feelings of inadequacy in order to feel morally superior and to have a platform to crush anyone who made them feel convicted for a life style is barred by the state and federal obscenity statutes and community standards by the use of government assets. H.B. 2, like the dictionary legally definition of marriage, arose to out of the nature of things to protect against people, who are as perpetually misguided in the same kind of way that Islamist jihadists are. "Blind" is how Chief Justice Roberts described it in his dissent. See also Tr. of Oral Arg. on Question 1, at 9, 10 in *Obergefell.* Moral relativist who have maliciously infiltrated public office unconstitutionally want to use our government to establish a cosmos and a caliphate of moral relativist that allows them to feel better about themselves. Meanwhile, H.B. 2 was passed to uphold the 1st amendment establishment clause from dishonest government officials who are using their

positions of office for personal gain and political power at the expense of the safety, health, and welfare of the public.

34. H.B. 2 mandates, *inter alia*, that all "[p]ublic agencies . . . require multiple occupancy bathrooms or changing facilities . . . be designated for and only used by individuals based on their biological sex." H.B. 2 defines "biological sex" as "[t]he physical condition of being male or female, which is stated on a person's birth certificate." H.B. 2 further defines "public agencies" to include, among other entities, the state executive, judicial and legislative branches, including the University of North Carolina system. While making individuals use bathrooms based on secular and neutral facts, like "biological sex," is one thing, the original Plaintiff wants trangenders to be able to use bathrooms based on their religious ideology and identity narratives, which is based on unproven faith based assumptions. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37). The intervening Plaintiffs - one the other hand - want to be allowed to use bathroom facilities in accordance with their sex based religious identity narrative if and only if transgenders get to. If the Court wants to disregard the 1st amendment and continue with the sex based civil rights crusade. The transgender, zoophile, and machinist church should be treated equally by the government. The Court should order the state and Federal Government to completely codify all of their sexual identity narratives or completely enjoin both from ever recognizing any sexual orthodoxy of any denomination flowing from the church of postmodern western individualistic relativism.

35. To the extent that H.B. 2 was enacted in direct response to Ordinance 7056 passed by the City Council in Charlotte, North Carolina (the "Charlotte Ordinance"), which permitted transgender individuals to use facilities corresponding to their gender identity by prohibiting

discrimination based on "gender identity" in places of public accommodation, the State was trying to prevent moral relativist from using government to codify their private moral code that most Americans believe is irrational, immoral, dehumanizing, dangerous, and subversive to individual and collective human flourishing.[16] The city ordinance violates the first amendment establishment clause and HB 2 seeks to uphold it. But the question is whether the Court is interested in upholding the 1st amendment.

36. Governor McCrory and North Carolina legislators made explicit public statements indicating that they proposed, passed, and signed H.B. 2 to overturn the Charlotte Ordinance and to ensure transgender individuals would not be permitted to access bathrooms and other facilities consistent with their religious self-proclaim gender identity in schools and other public agencies. The original Plaintiff does not understand that those statements made by Governor McCrory and North Carolina legislators were protected as "Government Speech" under *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) and are completely irrelevant to these matters.[17] The self-entitlement syndrome of the power hungry original Plaintiff make its capacity for rational thought absent.

---

[16] In fact, homsexuality was illegal in this country until recently and it remains illegal in many other modern nations because once it is legalized these kinds of discussion are the natural result. The question in this case is not whether homosexuality, zoophilia, machinism, and polygamy should be illegal. The paramount question is whether government can legally recognize sexual orientation orthodoxy whatsoever. That is, can the government on the state and federal level enshrine postmodern individual relativism orthodoxy as the supreme National religion? After all, there are two types of people in the world. People who know that they are making absolutely truth claims and who set up binaries and people who do the same thing, they just don't know that they are doing it. The President and the Attorney General are so blind and misguided that they fall into the second category. It is their misguided blindness and moronic subscription to the unexamined assumption of the superiority of our cultural moment that produces the marriage bans, DOMA, and HB 2 in the first place. Meanwhile, the First Amendment Establishment clause made all of that unnecessary to begin with, it is just that the Court is going to have to enforce the Constitution.

[17] Jay Seculow from the American Center For Law and Justice litigated that action before the Supreme Court. When Attorney General Lynch and President Obama go on National Television and say that homosexuality is like race, which is deliberate lie, their false speech is also government speech that is protected under *Pleasant Grove City,* 555 U.S. at 460. Their Speech is based on a religious belief that sexual orientation is based on immutability.

37. Prior to the passage of the Charlotte Ordinance in February 2016, Governor McCrory told members of the Charlotte City Council that the Ordinance could "create major public safety issues by putting citizens in possible danger from deviant actions by individuals taking improper advantage of a bad policy." Governor McCrory went on to explain that the "action of allowing a person with male anatomy, for example, to use a female restroom or locker room will most likely cause immediate State legislative intervention which I would support as governor." In other words, Governor McCrory is concerned with the public's health safety and welfare, not personal gain. He is concerned with first with crime "prevention," and not "prosecution" when it comes to sex crimes. Just as President Obama is for common sense gun control laws only because he pretends to be against crime, Governor McCrory is actually for common sense bathroom policies because he is sincerely concerned sex based with crime prevention. The Governor's motive behind H.B. 2 accords with the duty of care under negligence standards in warding off invasion of privacy, intentional infliction of emotional distress, sexual assault, ect. Yet, if transgenders employees are entitled to bathroom rights, so are zoophiles and machinists employees, like the intervening Plaintiffs.

38. When State Representative Dan Bishop introduced H.B. 2, he stated that "[a] small group of far-out progressives should not presume to decide for us all that a cross-dresser's liberty to express his gender nonconformity trumps the right of women and girls to peace of mind." Representative Bishop's speech was protected under *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) and does not impact the Constitutionality of the bill. While Representative Dan Bishop was doing his job, Attorney General Lynch and President Obama have completely failed

in doing theirs in this matter, as they misused the civil rights movement in step with a pattern of race baiting, which itself is a criminally actionable hate crime in kind.

39. The intervening Plaintiffs want special bathrooms for machinists and zoophiles. Meanwhile, for a transgender male to have government authorization to enter a woman's bathroom discriminates against women on the basis of gender and sex because these policies equate that which is not the same as if it was. It is self-evident that men and women are equal in worth but different in design physically, physiologically, biochemically, psychologically, metaphysically, and neurochemically. Likewise, a female transgender who is authorized by law to enter into a male's bathroom men is a policy that discriminates against men on the basis of sex because it equates two things that are not the same as if they were. Yet, nevertheless, if transgender's are going to receive special accommodates and benefits from government based on their religious identity narrative, then the machinists and zoophiles (like the intervening Plaintiffs) deserve the same kinds of benefits and privileges for their sexually based sexually beliefs too.

40. The bill passed both houses on March 23, 2016—the same day it was introduced. Governor McCrory signed the bill that night. H.B. 2 took effect immediately. Just as many states are lining up to declare that pornography is a public health crisis and pass the Child Online Filter Act (COFA) that Plaintiff Sevier authored as a result of his Federal litigation against Apple, Google, Samsung, Verizon, Dell, Samsung, Blackberry, Planned Parenthood, LG, Miscrosoft, ect, the transgender bathroom matter is self-evidently a public health crisis, and more than that, this action, like *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015), represents an absolute Constitutional

crisis.[18] Allowing the Plaintiffs to intervene can help the Court reach a sound Constitutional decision and help give better insights to a concerned public.

41. Following the conclusion of the special session, Senate President Phil Berger stated on his website, "[t]he North Carolina Senate voted unanimously Wednesday [March 23, 2016] to stop a radical and illegal Charlotte City Council ordinance allowing men into public bathrooms and locker rooms with young girls and women." Senator Berger characterized the Charlotte Ordinance as "dangerous" and claimed that it "created a loophole that any man with nefarious motives could use to prey on women and young children." Senator Berger forgot to meantion that the ordinance violates the 1st amendment establishment clause under the federal and state Constitutions. On balance, Senate President Phil Berger is concerned with secular matters like safety, whereas the original Plaintiff is selfishly only concerned with using government to codify a religious orthodoxy that is part of one denomination of the church of moral relativism for political purposes. The original Plaintiff's phony use of civil rights statute is literally an racially dishonest actionable hate crime 18 U.S. Code § 249 and an act of treason 18 U.S. Code § 2381. The intervening Plaintiff's presence in this case allows the original Plaintiff to actually make civil rights arguments on behalf of all non-obvious classes of sexual orientation.

42. Lieutenant Governor Dan Forest stated that the Charlotte Ordinance "would have given pedophiles, sex offenders, and perverts free rein to watch women, boys, and girls undress and use the bathroom." Of course, the problem is far worse than that in the Federal Government's transgender policies desensitize, depersonalize, and dehumanize both men and women. It

---

[18] "If you are among the many Americans—of whatever sexual orientation—who favor expanding same-sex marriage, by all means celebrate today's decision. Celebrate the achievement of a desired goal. Celebrate the opportunity for a new expression of commitment to a partner. Celebrate the availability of new benefits. But do not celebrate the Constitution. It had nothing to do with it." *Obergefell* at 29 (Roberts Dissent).

normalizes false permission giving beliefs about sex, which erodes consent and makes the government culpable in sexual exploitation and child exploitation. With sex trafficking racketeers literally out of control within the United States, the original Plaintiff merely wants to proliferate the sexual holocaust within our midsts that involves and interconnected continuum between strip clubs, cartels, child exploitation, abortion, pornography, and the LGBT gestapo, who is anything but tolerant. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37).

## Defendants' Compliance with and Implementation of H.B. 2 and the United States' Response

43. On April 5, 2016, following the enactment of H.B. 2, Defendant University of North Carolina's President, Margaret Spellings, issued a Memorandum to all Chancellors in the University of North Carolina system, titled "Guidance – Compliance with the Public Facilities Privacy & Security Act." The Memorandum directed Chancellors that "University institutions must require every multiple-occupancy bathroom and changing facility to be designated for and used only by persons based on their biological sex."

44. As a federal funding agency, when the Department of Justice has reason to question a funding recipient's compliance with Title IX, it gives notice of non-compliance and attempts to secure the recipient's compliance through voluntary means.

45. On April 8, 2016, the United States sent a letter to President Spellings seeking information to determine whether the University was complying with federal law. The letter made no mention of the interests of zoophiles, machinists, and polygamists but was only sent on behalf the LGBT denomination because the original Plaintiff is only pretending that these matters arise under civil rights statutes because it is thinks it is entitled to emotionally and sexually exploit the public at the expense of the first amendment and 14th amendment.

46. In a response dated April 13, 2016, President Spellings affirmed that "the University is specifically covered by H.B. 2 and is required as a public agency to comply with its applicable portions, including the provisions related to multiple-occupancy bathrooms and changing facilities."

47. On April 12, 2016, Governor McCrory issued Executive Order 93, implementing H.B. 2 and affirming that "every multiple occupancy restroom, locker room or shower facility located in a cabinet agency must be designated for and only used by persons based on their biological sex." 48. Access to bathrooms and changing facilities on the University of North Carolina campus are covered by the non-discrimination mandates of Title IX and VAWA if and only if these matters are not shut down by the first amendment establishment clause out of the gate cause there to be an absence of subject matter jurisdiction. See Rule 12(b)(1).

49. Access to bathrooms and changing facilities operated by Defendant North Carolina Department of Public Safety and its sub-recipients are covered by the non- discrimination mandate of VAWA.

50. Access to bathrooms and changing facilities in the workplace at public agencies in the State of North Carolina is a term, condition and privilege of employment and, therefore, is covered by the non-discrimination mandate of Title VII if sexual orientation can be proven to be based on immutability like skin pigmentation and not a religious orthodoxy.

51. In letters dated May 4, 2016, the United States notified all Defendants, including the University of North Carolina, that the United States had determined they were not in compliance with Title VII, Title IX, and/or VAWA, based on their compliance with and implementation of provisions of H.B. 2 that are irreconcilable with federal law. The United States requested that

Defendants immediately agree not to comply with those provisions of H.B. 2, ensure that

transgender persons were entitled to use multiple-occupancy bathrooms and changing facilities

consistent with their gender identity as required by federal law, and retract any statements to the

contrary. The United States advised Defendants that it would take enforcement action under the

above statutes if such compliance with federal law was not demonstrated. Yet, the original

Plaintiff intentionally did not mention the bathroom rights of polygamists, zoophiles, and

machinists because the original Plaintiff is merely pandering to a shallow cultural narrative that

is narrow, exclusive, and out-of-date and completely based on unproven faith based assumptions

that involve a movement that is so removed of dignity that it has to self-identify as a pride

movement in order to seem valid.

52. Upon information and belief, as of the filing of this Complaint, no Defendant has taken steps

to achieve that compliance because the transgender bathroom policy floated by the Plaintiff

violates the first amendment establishment clause of the United States Constitution under the

lemon test and coercion tests. *Lee v. Weisman*, 505 U.S. 577 (1992); *School District v. Doe*, 530

U.S. 290 (2000); *County of Allegheny v. ACLU*, 492 U.S. 573 (1989). Plus, the Defendants has

not complied with the original Plaintiff's demand because it has a compelling interest to protect

the public health and to uphold the standards of decency. Furthermore, the Defendants have not

complied with the original Plaintiff's insufficient demand because it only concerned the largest

minority of a suspect class - the homosexuals - and not polygamists, zoophiles, and machinists.

Legally speaking homosexuals, polygamists, zoophile, and machinists rights are equal. [19]

---

[19] The Intervening Plaintiffs will pile onto this Court sworn statements which demonstrates that transgenderism, homosexulity, polygamy, zoophilia, machinism, and western postmodern individualistic relativism are religious narratives that cannot be legally recognized by either the state or Federal Government. This would include the Constitutional necessity and mandate to nullify gay marriage for all 50 states immediately. If the Court is looking for a scapegoat, here it is, the question of gays rights and gay marriage never should have been left to the states to begin

53. If the Courts are going to continue to disregard of the 1st amendment establishment clause, and only consider these matters through the lens of the 14th amendment and immutable traits, the intervening Plaintiffs want to enjoy the same civil rights and fundamental rights as transgenders based on their identity narratives. The original Plaintiff might be irrational and self-serving, but the Court is expected to impartial and fair Constitutional common sense.[20] The Court is not a slave to culture. The Court is a creature of the Constitution who is a slave to it as a necessity for freedom.

53. The original Plaintiff's injuries in this case are at best academic, if not non-existent. The original Plaintiff in keeping with its pattern of ends justify the means judicial fraud has failed to provide a single actual example where a transgender employee has suffered an personal injury in fact because of HB 2. By way of Contrast, the intervening Plaintiff's injuries are are personal and cognizable under Article III. Unlike the original Plaintiff, the intervening Plaintiffs have actual standing to appear before this Court. The intervening Plaintiffs individually and collectively put a real face to the injury complained of by the original Plaintiff, only the intervening Plaintiffs are members of a the true minority suspect class of sexual orientation and the smaller sects of the church of postmodern western individual expressive relativism that comes directly out of the enlightenment tradition. The notion that "a bare . . . desire to harm a politically unpopular group

---

with since the first amendment establishment clause precludes it. The question is not whether "America is a Christian Nation" as the Supreme Court in Holy Trinity v. United States, 143 U.S. 457 (1892) found or whether the "the United States is a Savage Nation" as Justice Kennedy found in *Planned Parenthood v. Casey,* 505 U.S. 833, 851(1992). The United States is a Constitutional Nation. And the Constitution must be strictly applied regardless of who it offends.

[20] Justice Roberts stated: "The legitimacy of this Court ultimately rests "upon the respect accorded to its judgments." *Republican Party of Minn. v. White,* 536 U. S. 765, 793 (2002) (KENNEDY, J., concurring) *Obergefell* at 19 (Roberts Dissenting).

cannot justify disparate treatment of that group" applies more to machinists, polygamists, and zoophiles than to transgenders at present. *Romer v. Evans,* 517 U.S. 620, 635 (1996).

## Gender Identity and Its Relationship to Sex Are Not Based In Immutable Traits, They Are Based In Religious Identity Narratives

54. Individuals are typically assigned a sex on their birth certificate solely on the basis of the appearance of the external genitalia at birth, which makes sense and has nothing to do with political power plays that confuses minors. Additional aspects of sex (for example, chromosomal makeup) typically are not assessed and considered at the time of birth, except in almost non-existent cases of infants born with ambiguous genitalia.

55. The idea that floated by the original plaintiff that "an individual's sex consists of multiple factors, which may not always be in alignment. Among those factors are hormones, external genitalia, internal reproductive organs, chromosomes, and gender identity, which is an individual's internal sense of being male or female" is nothing more than an unproven faith based assumption that is a naked assertion that can only be taken on faith. Such a position floated by the original Plaintiff is self-justifying, circular, and an absolute manipulative attempt to use government to codify the religious orthodoxy of the largest denomination within the church of postmodern individual relativism. It is an intellectually imperialistic act to control thought. There is no doubt that moral relativist in office are using the bathroom to stick it to Christians, since after all most of them vote Republican. But they are doing so at the expense of the Constitution in a manner that amounts to criminal racketeering and treason. Furthermore, the true minority of sex based identity class are being left behind intentionally and maliciously. Even if the original Plaintiff was not misusing the civil rights movement to impose an unconstitutional

agenda, it excludes the true minority of sexual orientation, which harms the intervening Plaintiffs.

56. Sex is based on classical conditioning. Whatever a person has sex with they bond with.[21] If a person has sex with a blow up doll, they can come to prefer that. If a person has sex with an animal they can come to prefer that. This is especially true upon orgasm, when bonding neurotransmitters like oxytocin, serotonin, and dopamine are released. There is a reason why there thousands of pornographic websites that cater to zoophiles and machinists.

33. The idea that floated by the original Plaintiff that "for individuals who have aspects of their sex that are not in alignment, the person's gender identity is the primary factor in terms of establishing that person's sex. External genitalia are, therefore, but one component of sex and not always determinative of a person's sex" is absolutely an unproven faith based assumption that is implicitly religious and cannot be conclusively proven. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37). Such a reckless premise floated by the original Plaintiff is more likely than not, a dishonest attempt to self-justify one sect of a religious ideology that will afford more power to moral relativists in office, who are disciples of the largest denomination of that religion. While a person can self-identify as a transgender, zoophile, machinists, and polygamists the legal question presented is whether the Government can legally codify and recognize these identity narratives as if they are made of the same self-evident truths found in the bill of rights. The

---

[21] There is no such thing as "gay people." There are only people. And President Lincoln was correct: "all people are born equal." We are all born equally broken and in need of something to orbit around. Not all people are under the same stream of influence. We do not all make the same life style choices. There is nothing more natural in the order of things than violence. If a person feels angry, and acts on that anger committing second degree murder, at trial, the defendant cannot use the Lady Gaga defense and assert, " Your Honor you must acquit, I was born this way, I experienced feelings of anger and acted upon them in killing a provocateur." Indeed, the government does not release inmates who have been convicted of murder two because we are worried that they or their children might feel embarrassed by their lifestyle choice. The original Plaintiff here is trying to legislate away feelings of shame and inadequacy of one particular group of people who are in the church of moral relativism. It is not that such a goal is merely stupid, it is simply the case the Plaintiff's crusade is patently unconstitutional.

answer is no. But if the Federal Court is going to disregard the first amendment - as it has - it must give the same legal rights to zoophiles, machinists, and polygamists that it gives to transgenders. That is not a matter of a "slippery slope." It is a matter of how the Constitution works. *McDonald Santa Fe Trail Transp. Co.*, 427 U.S. 273, 27879, 96 S. Ct. 2574, 2578, 49 L. Ed. 2d 493 (1976).[22]

57. The idea floated by the original Plaintiff that "transgender individuals are individuals who have a gender identity that does not match the sex they were assigned at birth. A transgender man's sex is male and a transgender woman's sex is female" is another unproven faith based assertion that is semi-religious and based on naked assertions with the Government cannot codify in light of the first amendment establishment clause under the lemon test and coercion test. The Court cannot consider it as a plausible basis for law, especially since both teleological and cosmological evidence demonstrates that the original Plaintiff is outright lying to the Court in a manner that is disbarrable and criminally sanctionable. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37). Facts and logic are the original Plaintiff's enemy next to the Constitution. The original Plaintiff's are not merely pathological, they are asserted in step with an ongoing pattern of political malpractice and intellectual dishonesty that should compel the Court to hold them accountable, in light of the confusion and damage their malicious misconduct is inflicting on the public's health safety and welfare. The fact that original Plaintiff is threatening to withhold funds

---

[22] Civil rights are an all or nothing affair. The original Plaintiff seems to be simply monkeying with parts of the Constitution as a power play with total disregard for the public's health. The overall goal of the original Plaintiff could not be more clear, it wants to exclude Christians from working in government and the political process because they typically do not vote Democrat. Plaintiff Sevier works extensively overseas in refugee camps. The Democrats do not really care about refugees, they only would let them into this Nation because they assume they will vote Democrat. The Democrats are obsessed with cultivating power even if it means an anti-truth and anti-Constitutional cosmos is created within the United States.

from a college is criminally extortionistic. The Court cannot merely play footsie with the
original Plaintiff's deliberate waste, fraud, mismanagement, and abuse.

58. The original Plaintiff's assertion that "*a transgender individual may begin to assert a gender
identity inconsistent with their sex assigned at birth at any time from early childhood through
adulthood. The decision by transgender individuals to assert their gender identity publicly is a
deeply personal one that is made by the individual, often in consultation with family, medical
and health care providers, and others*" is hyper-religious assumption floated by the original
Plaintiff that is once again predicated on unproven faith basis assumptions. Like rape,
homosexuality is over conformity to society's messages. It is true that "gender identity" like
"Christian identity," "Muslim identity," and "Judaism identity" are "deeply personal" so much so
that the Government cannot legally recognize one of these identity narratives without causing it
to be established as the supreme national religion, which enables government assets to be used to
oppress non-converts. While it is absolutely true that not all truth claims are equal, the
homosexual religious narrative cannot be supported by the government at the expense of all of
the other identity narratives. [23] Dr. King was never pushing for the United States to codify moral
relativism. He was pushing the Government to codify self-evident truth that was clearly based on
immutability and not feelings and identity narratives.

---

[23] All religion amounts to is a set of ideas to the greater questions. Religion is a set of answers to who humans are
and what we should be doing. Religion amounts to a set of truth claims that are unproven and have to be taken on
faith. For example, no one can fully prove that the Christian God of the Bible exists. However, no one can really
disprove it either. It takes a huge amount of faith to be an atheist. For a person to actually believe that this world is
one big accident and that truth is relative takes enormous amount of religious faith. To suggest that humans are
merely accidental particles, animated pieces of meat, and a bundle of chemicals is merely a faith based position. To
suggest that sexual orientation is immutable is absolutely a religious narrative whether moral relativist in office want
to see it or not does not matter. To suggest that doctrine does not matter is itself a doctrine that is vying for
superiority amongst all of the other truth claims.

59. The idea that floated by the original Plaintiff that "gender identity is innate and external efforts to change a person's gender identity can be harmful to a person's health and well-being" is intellectually dishonest. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37), But even the weight of the evidence did not prove the assertion to be patently false, it is at the very least an implicitly religious premise that cannot be used as a basis for law and policy, despite the narcissistic self-entitlement syndrome manifest by the original Plaintiff in its persistent state of blindness which makes it debatable whether Islamic jihad or the largest denomination in the church of moral relativism pose a greater threat to American democracy.

60. The idea floated by the original Plaintiff that *"gender identity and transgender status are inextricably linked to one's sex and are sex-related characteristics"* is proven to be false by direct testimony of former homosexual gay activist, who expose the LGBT community for the emotionally and sexually exploitative hate group that is trying to use government to coercively prosthelytize its worldview. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37). But even if not conclusively proven false - and it is - the above premise spewed forth by the original Plaintiff is an unproven faith based assumption that is implicitly religious. Neither the Courts nor the state and federal government can rely on its as a basis for law and policy without violating the first amendment establishment clause.[24]

---

[24] That fact that *"most states authorize changing the sex marker on one's birth certificate, but the requirements for doing so vary and are often onerous. Specifically, many states require surgical procedures. At least one state does not allow persons to change the sex marker on their birth certificates"* is Constitutionally outrageous. While an individual is free to personally believe that they are a "unicorn" or "the fairy Godmother," state documents should never be used to help that individual prove to themselves and to other Americans that they are actually what their feelings tell them they are. And the Government is Constitutionally prohibited from codifying identity narratives that diverge from self-evident truth that is neutral. No state should ever allow anyone to monkey with their birth certificate in order to confirm their private ideology that many might think is subversive to individual and collective human flourishing.

61. The fact that "*individuals born in North Carolina must have proof of certain surgeries, such as 'sex reassignment surgery,' in order to change the sex marker on their birth certificates. N.C. Gen. Stat. § 130A-118(b)(4)*" is itself Constitutionally unsound. Under no circumstances should any individual be allowed to change their birth certificates. A person who reads a lot of folk lore novels and elect to have a horn surgically implanted on their forehead, even though that individual could self-identify as a unicorn, the government cannot legally recognize that individual as a "unicorn" and it cannot make others legally recognize that individual as a "unicorn" without violating the freedom of expression of everyone else - but the person who feels that they have become a unicorn is free to privately and publicly believe that they are a unicorn. It just that the government cannot commingle identity narratives with government policy.

62. The fact that "surgery related to gender transitioning is generally unavailable to children under age 18" is based on the same compelling state interest for why minors cannot by pornography. The fact that "the great majority of transgender individuals do not have surgery as part of their gender transition" by no means enables the state and federal government to even think of codifying homosexual religious orthodoxy in light of the lemon test and coercion tests.

## Impact of H.B. 2 on Transgender Individuals in North Carolina

63. H.B. 2 requires public agencies to follow a facially discriminatory policy of treating transgender individuals, whose religious personalized gender identity may not match their birth certificates, differently from similarly situated individuals who do not subscribe to their worldview. H.B. 2 serves a secular purposes based on a compelling state interest whether as the

original Plaintiff's agenda is fixated on using government to establish a shallow, narrow,
exclusive, and out-of-date culturally driven religious narrative that has nothing to do with civil
rights. Yet, if H.B. 2 is invalid as applied to transgenders because the court wants to play pretend
and disregard the 1st amendment of the United States Constitution, then very obviously, H.B. 2
discriminates and injures the intervening Plaintiffs in a material way, not a theoretical one as
advanced by the Plaintiff who is merely set out on a egotistic blackmailing power trip that
warrants criminal prosecution under racketeering in obscenity, fraud, and human trafficking.
64. Because of the Defendants' compliance with and implementation of H.B. 2, non-transgender,
non-zoophiles, non-machinists, and non-polygamists employees of Defendants and of other
public agencies in North Carolina may access bathrooms and changing facilities that are
consistent with their self-evident sex in their places of work, while transgender, zoophile,
polygamists, and machinists employees may not access bathrooms and changing facilities that
are consistent with their self-identified religious gender identity that is based on their sexual
preference are private religious narratives that the Federal Government wants to shove down the
throats of the Nation in the name of freedom and tolerance with the expectation of prosecutorial
immunity, even after a change in administration.

65. Defendants' compliance with and implementation of H.B. 2 stigmatizes and singles out
individuals who self-identify as transgender, zoophile, polygamist, and machinists employees,
results in their isolation and exclusion, and perpetuates a sense that their worldviews are not
worthy of equal treatment and respect by the government at the expense of the ideology that this
"Nation was founded" on that accords with self-evident truth. *Obergefell* at 17 (Thomas
Dissenting). A "chilling effect" under the free speech clause has been created by the judicial

malpractice in monumental cases like *United States v. Windsor,* 133 S. Ct. 2675, 186 L. Ed. 2d

808 (2013) and *Obergefell* as (1) Christian clerks have been put in jail (Kim Davis),[25] as (2)

Christian Judges have been subjected to phony ethics hearings (Judge Roy Moore);[26] as (3)

Christian law professors have been the target of social ostracism campaigns (Carl Swain),[27] as

(4) ex-gays are violently oppressed and (Greg Quinlan);[28] as (5) fire chiefs are fired for believing

in the unrevised version of the Bible (Kelvin Cochran),[29] as (6) Christian florists,[30] (7) Christian

bakers,[31] (8) Christian ranchers[32] have been hauled into civil court for not adequately paying

homage to the Nationally recognized homosexual dogma. *United States v. Windsor,* 133 S. Ct.

2675, 186 L. Ed. 2d 808 (2013) and *Obergefell v. Hodge,* 192 L. Ed. 2d 609 (2015). The real

goal of the original Plaintiff is to exclude Christians from office and the political process.

66. Upon information and belief, transgender, zoophiles, machinists, and polygamists students,

employees, visitors, and prospective employees like the Plaintiffs of Defendants and other public

---

[25] "Kim Davis chooses jail." http://www.nytimes.com/2015/09/04/us/kim-davis-same-sex-marriage.html?_r=0;

[26] "The Honorable Judge Roy Moore suspended from office: Alabama chief justice faces removal over gay marriage stance"
http://www.al.com/news/index.ssf/2016/05/alabama_chief_justice_roy_moor_10.html

[27] Now at Vanderbilt Conservative Professor targeted by offended student.
http://www.infowars.com/now-at-vanderbilt-conservative-professor-targeted-by-offended-students/

[28] "Gays Hating Ex-Gays: Wayne Besen's Verbal Assault on Greg Quinlan"
http://americansfortruth.com/2009/04/13/gays-hating-ex-gays-wayne-besens-verbal-assault-on-greg-quinlan/

[29] "Ex-Fire Chief Dismissed for His Faith Testifies at Religious Liberty"
Hearinghttp://www1.cbn.com/cbnnews/us/2016/july/ex-fire-chief-dismissed-for-his-faith-testifies-at-religious-liberty-hearing?cpid=:ID:-12100-:DT:-2016-07-13-12:06:54-:US:-JG1-:CN:-CP1-:PO:-GC1-:ME:-SU1-:SO:-FB1-:SP:-NW1-:PF:-TX1-

[30] "Then I was sued: read passionate defense from grandma florist sued for refusing to service gay wedding."
http://dailycaller.com/2015/11/11/read-passionate-defense-from-grandma-florist-sued-for-refusing-to-service-gay-wedding/

[31] Baker owners refuse to pay damages in gay wedding cake case.
http://www.foxnews.com/us/2015/10/01/oregon-bakery-owners-refuse-to-pay-damages-in-gay-wedding-cake-case.html

[32] Judge fines Christian farm owners for refusing to host gay wedding.
http://www.theblaze.com/stories/2014/08/21/judge-fines-christian-farm-owners-13000-for-refusing-to-host-gay-wedding/

agencies in North Carolina have suffered and continue to suffer injury, including, without limitation, emotional harm, mental anguish, distress, humiliation, and indignity as a direct and proximate result of Defendants' compliance with and implementation of H.B. 2 if and only if the first amendment establishment clause does not nullify the all gay rights, gay marriage, and transgender rights policies and if and only if all sects within the church of postmodern individual relativism are treated equally.

67. Because of the compliance with and implementation of H.B. 2 by Defendants University of North Carolina and Board of Governors of the University of North Carolina, individuals who are not transgender, zoophiles, polygamists, and machinists may access campus bathrooms and changing facilities that are consistent with their secular gender identity based on neutral self-evident facts and not ideology believes that cannot be proven, while individuals who are transgender, machinists, zoophiles, and polygamists may not access campus bathrooms and changing facilities that are consistent with their religious gender identity and ideology that the Democrats want to establish as a National Religion in step with their personalized jihad to establish a caliphate of moral relativism in hopes that their feelings of shame and inadequacy will evaporate and sense of moral superior confirmed.

68. The compliance with and implementation of H.B. 2 by Defendants University of North Carolina and Board of Governors of the University of North Carolina stigmatizes and singles out machinists, zoophiles, and polygamists if and only if transgenders are given special privileges as the result of an ongoing "egotistic judicial putsch," resulting in their isolation and exclusion, and perpetuating a sense that their religious beliefs are not worthy of equal treatment and respect as

those who self-identify as disciples of the homosexual congregation, after plugging into that particular stream of influence.

69. Upon information and belief, transgender, zoophiles, machinists, and polygamists individuals seeking access to the University of North Carolina campus have equally suffered and continue to suffer injury, including, without limitation, emotional harm, mental anguish, distress, humiliation, and indignity as a direct and proximate result of compliance with and implementation of H.B. 2.

70. Because of the compliance with and implementation of H.B. 2 by Defendants North Carolina Department of Public Safety, University of North Carolina, and Board of Governors of the University of North Carolina, individuals who are not transgender, zoophiles, machinists, and polygamists may access bathrooms and changing facilities that are consistent with their natural, neutral, self-evident, and fact based gender in covered facilities, while individuals who are transgender, zoophiles, machinists, and polygamists may not access bathrooms and changing facilities that are consistent with their conquest that is bent on using government to give credence to an ideology that (1) objectively violates the community standards of decency, that (2) was criminalized until recently, that (3) expressly violates the first amendment establishment clause under the lemon test and coercive tests that (4) treats different sects within the same religion differently, and that (5) leaves behind the true minority of a suspect class if sexual orientation is really as civil rights movement as the original Plaintiffs only pretend to cultivate political power at the expense of the public's health. [33]

---

[33] An intervenor's burden to show inadequate representation "'should be treated as minimal.'" *Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). The movant need not show that the current representation of his interests will "definitely" be inadequate," only that it "may be" inadequate." *JLS, Inc. v. Pub.*

71. The compliance with and implementation of H.B. 2 by Defendants North Carolina

Department of Public Safety, University of North Carolina, and Board of Governors of the

University of North Carolina stigmatizes and singles out transgender, machinists, zoophiles, and

polygamists individuals equally, who seek access to covered facilities, results in their

self-cultivated isolation and exclusion, and perpetuates a sense that their religious ideology is not

worthy of equal treatment and respect by the government.

72. Upon information and belief, those who self-identify as transgender, machinists, zoophiles,

and polygamists seeking access to covered facilities have suffered and continue to suffer injury,

including, without limitation, emotional harm, mental anguish, distress, humiliation, and

indignity as a direct and proximate result of compliance with and implementation of H.B. 2 if

and only if the first amendment establishment clause does not bar the codification of postmodern

individualistic dogma.

## CLAIMS FOR RELIEF
Violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e, *et seq.*
(Against All Defendants)

---

*Serv. Comm'n of W. Va.*, 321 F. App'x 286, 289 (4th Cir. 2009) (citing *Trbovich*, 404 U.S. at 538 n.10; *Teague*, 931 F.2d at 262). "Many factors may suggest inadequate representation." *Titan Atlas Mfg. v. Sisk*, 2014 U.S. Dist. LEXIS 27094, at 15 (W.D. Va. Mar. 4, 2014), such as (1) whether the interests of intervenors and existing parties are identical or may diverge; (2) whether intervenors have "stronger incentives" to defend their interests more "vigorously" than existing parties; and (3) whether intervenors raise additional legal theories not raised by existing parties. *See, e.g., In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (noting interests may converge in some respects but diverge in others); *Felman Prod. v. Indus. Risk Insurers*, 2009 U.S. Dist. LEXIS 117672, at 9-10 (S.D. W.Va. Dec. 16, 2009) (granting intervention when interests of parties and intervenor "are not coextensive") (citing *Teague*, 931 F.2d at 262); *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*, 2016 U.S. Dist. LEXIS 16610, at 16 (E.D. Va. Feb. 9, 2016) (finding "distinguishable interests" sufficient for intervention). *Titan Atlas*, 2014 U.S. Dist. LEXIS at 16; *Teague*, 931 F.2d at 26;; Titan Atlas, 2014 U.S. Dist. LEXIS at 16; Teague, 931 F.2d at 262.

73. As alleged in this Complaint, Defendants State of North Carolina, North Carolina Department of Public Safety, University of North Carolina, and Board of Governors of the University of North Carolina are engaged in, and continue to engage in, a pattern or practice of sex discrimination in the terms, conditions, and privileges of employment against their transgender, polygamist, zoophile, and machinist employees and prospective employees in violation Title VII if and only if the codification of gay rights, gay marriage, and transgender rights does not violate the first amendment establishment clause under the lemon test and coercion tests.

74. As alleged in this Complaint, Defendants State of North Carolina and Governor McCrory have engaged in a pattern or practice of resistance to the full enjoyment of employment rights under Title VII by implementing and requiring compliance with policies and practices that require public agencies to discriminate against their transgender, machinist, zoophiles, and polygamists employees based on religious identity narratives in the area of sex in the terms, conditions, and privileges of employment in violation of Title VII.

75. Neither Plaintiff Sevier nor Plaintiff Ording are allowed access to bathrooms that are equipped to service their needs as machinists and zoophiles. Plaintiff Sevier visited the University of North Carolina and literally had to use the men's room based on the his male anatomy and not based on his ideological views in the area of gender, sex, and philosophy.

76. Plaintiff Sevier's injury was cognizable.

**COUNT II**
Violation of Title IX of the Education Act Amendments of 1972 ("Title IX")
20 U.S.C. § 1681, *et seq.*
(Against Defendants University of North Carolina and Board of Governors of the University of North Carolina)

77. As alleged in this Complaint, Defendants University of North Carolina and Board of

Governors of the University of North Carolina are discriminating on the basis of sex in violation

of Title IX if and only the codification of gay rights, gay marriage, and transgender rights does

not violate the first amendment establishment clause under the lemon test and the coercion test,

since there is no real proof that sexual orientation is based on immutable traits. (See Declaration

of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37).

## COUNT III
Violation of the Violence Against Women Reauthorization Act of 2013 ("VAWA")
42 U.S.C. § 13925(b)(13)
(Against Defendants North Carolina Department of Public Safety, University of North Carolina, and Board of
Governors of the University of North Carolina)

78. As alleged in this Complaint, Defendants North Carolina Department of Public Safety,

University of North Carolina, and Board of Governors of the University of North Carolina are

discriminating on the basis of sex and gender identity, in violation of VAWA, as applied to

Plaintiff Ording who was born with female anatomy, but not as applied to Plaintiff Sevier, since

he was born with male anatomy, even though it is not supposed to matter what anatomy one has

according to the original plaintiff. 42 U.S.C. § 13925(b)(13) only applies to transgenders,

machinists, polygamists, and zoophiles if the first amendment establishment clause does not

preclude the State and Federal Government from recognizing sexual orientation orthodoxy.

## COURT IV
## The First Amendment Establishment Clause: Treating Different Sects Differently

79. Homosexuality and transgenderism is based on identity narratives that are predicated on

unproven faith based assumptions that are implicitly religious. So is zoophilia and machinism.

Homosexuality, machinism, zoophilia and polygamy are all part of the religion of postmodern

western expressive individual relativism that comes out of the enlightenment tradition and

expressive individualism. Sexual orientation doctrine is part of central doctrine of that church.

80. Homosexuality and transgenderism are merely one of many denominations within this

church. Plaintiff Sevier belongs to the machinist sect and Plaintiff Ording belong to the zoophile

sect.

81. The Defendants lack a compelling interest to treat zoophiles and machinists differently than

transgenders in light of the first amendment establishment clause.

82. Since bathroom rights, privileges, accommodations are provided to individuals who

self-identify as transgender, then the intervening Plaintiffs are entitled to the same rights,

privileges, and accommodations based on their identity narrative.

## COUNT VI
## DUE PROCESS

83. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42

U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property,

without due process of law." U.S. Const. amend. XIV, § 1.

84. HB 2 violates the due process rights fundamental of zoophiles, transgenders, and machinists,

equally or not at all.

85. The State lacks a compelling interest to allow for transgenders to use the bathroom based on

their identity narratives but not zoophiles and machinists.

86. The Due Process Clause also protects choices central to personal dignity and autonomy,

including each individual's rights to dignity and association.

## COUNT V.
## EQUAL PROTECTION

87. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

88. The State of North Carolina has no legitimate interest in discriminating against citizens on the basis of sexual orientation in the true minority class of sexual orientation if in fact sexual orientation is a basis for civil rights.

89. The Defendants have no legitimate interest in discriminating against citizens on the basis of sex, regarding the individuals in the non-obvious class of sexual orientation if homosexuals cannot be discriminated on the basis of their sexual preference.

90. Sexual orientation bears no relation to a person's ability to perform in or contribute to society.

91. If HB 2 is invalid as to transgenders it is invalid as to machinists and zoophiles. The Defendants engage in sex-based discrimination without a rational basis in allowing transgenders to use the bathroom that fits their identity narrative not allowing machinists and zoophiles from using bathrooms based on their ideology and identify narrative that is based on sex.

92. Gay and lesbian people have not experienced a history of discrimination in the United States and in the State of North Carolina, like Christians, zoophiles, and machinists have. If gays feel like second class citizens, machinists, zoophiles, polygamists, Jews, Muslims, and Christians feel like third class citizens because they must pay homage to homosexual ideology.

93. To the same extent that sexual orientation for homosexuality is an immutable trait it is an immutable trait for machinists and zoophiles too. (See Declaration of Cothran ¶¶ 1-50 and Quinlan ¶¶ 1-37).

94. It is totally false to suggest that HB 2 only singles out homosexuals. It also excludes zoophiles, polygamists, and machinists.

95. If the original plaintiffs can prove that these are civil rights ones, HB 2 is motivated by a desire to harm a politically unpopular group and not a religious ideology. All individuals withiin the class of sexual orientation will be harmed, not just homosexuals.

96. HB 2 violates the equal protection guarantees of the Fourteenth Amendment facially and/or as applied to the intervening Plaintiffs by infringing on their rights to use bathrooms that fit their identity narratives to the same extent that transgenders are harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that this Court:

A. Declare that, by complying with and implementing H.B. 2's provisions that apply to multiple-occupancy bathrooms or changing facilities, Defendants discriminate on the basis of sex in violation of Title VII against individuals who self-identify as zoophiles, machinists, and transgenders equally;

B. Declare that, by complying with and implementing H.B. 2's provisions that apply to multiple-occupancy bathrooms or changing facilities, Defendants University of North Carolina and Board of Governors of the University of North Carolina discriminate on the basis of sex in violation of Title IX against those who self identity as transgenders, zoophiles, and machinists;

C. Declare that, by complying with and implementing H.B. 2's provisions that apply to multiple-occupancy bathrooms or changing facilities, Defendants North Carolina Department of Public Safety, University of North Carolina, and Board of Governors of the University of North

Carolina discriminate on the basis of sex and gender identity in violation of VAWA against females who self-identify as transgender, machinists, and zoophiles;

D. Issue a preliminary and permanent injunction to prevent the state from treating members of the transgender church more favorably than individuals who are members of the church of zoophilia and machinism.

E. Issue a declaration, preliminary injunction, and permanent injunction if in fact sexual orientation is a suspect class under the due process and equal protection clause of the 14th amendment;

E. Issue a preliminary and permanent injunction to prevent further violations of federal law;

F. Alternatively, the intervening Plaintiff's seek an injunction to enjoin the State Government and the Federal Government from recognizing gay marriage, gay civil rights, transgender rights, and sexual orientation laws for violating the first amendment establishment clause under the coercion test and lemon test;

G. In the Alternative, the intervening Plaintiffs seek a declaration whether or not *Obergefell v. Hodge*, 192 L. Ed. 2d 609 (2015) and *United States v. Windsor,* 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) holdings are Constitutionally sound and whether sexual orientation is really based on immutability;

E. Grant such additional relief as the needs of justice may require.

Respectfully submitted,

/s/Chris Sevier/


/s/Elizabeth Ording/

/s/Chris Sevier/
9 Music Square South 247
Nashville, TN 37203
420 W 42
New York, NY 10036
23 Rankin Ave,
Asheville, NC 28801
(615) 500 4411
ghostwarsmusic@gmail.com
BPR#026577
1LT 27A JAG _th SPF G
Ghost OP Mike Iota

/s/Elizabeth Ording/
219 S Limestone
Lexington KY 40508
(224) 500 7744
rougeattorneyatlaw@gmail.com
Ghost OP Echo 6

## CERTIFICATE OF SERVICE

The Intervening Plaintiffs hereby certify that they have mailed the these documents with adequate postage to the this 21 day of July 2016 to CANDYCE PHOENIX 601 D ST., NW
WASHINGTON, DC 20579, candyce.phoenix@usdoj.gov; COREY L. STOUGHTON U. S. DEPARTMENT OF JUSTICE 950 PENNSYLVANIA AVE., N.W. WASHINGTON, DC 20530 ; corey.stoughton@usdoj.gov;
DWAYNE J. BENSING 950 PENNSYLVANIA AVE., NW, STE. 4500; Dwayne.Bensing@usdoj.gov; JON W.
DAVIDSON, 4221 WILSHIRE BLVD., STE. 280 LOS ANGELES, CA 90010; jdavidson@lambdalegal.org;
JONATHAN D. NEWTON, 601 D ST., NW WASHINGTON, DC 20579, jonathan.newton@usdoj.gov; LORI B.
KISCH, 950 PENNSYLVANIA AVE., NW, STE. 4500 PHB WASHINGTON, DC 20530; lori.kisch@usdoj.gov;
RIPLEY RAND; 101 S. EDGEWORTH ST., 4TH FLOOR GREENSBORO, NC 27401; ripley.rand@usdoj.gov;
SEAN R. KEVENEY, 950 PENNSYLVANIA AVE., N.W. WASHINGTON, DC 20530;
sean.r.keveney@usdoj.gov; TOREY B. CUMMINGS; 601 D ST., NW WASHINGTON, DC 20579,
Torey.Cummings@usdoj.gov; WHITNEY PELLEGRINO, 601 D ST., NW  WASHINGTON, DC 20579;
Whitney.Pellegrino@usdoj.gov; TARYN WILGUS NULL; 950 PENNSYLVANIA AVE., NW, STE. 4500
WASHINGTON, DC 20530; Taryn.Null@usdoj.gov; KARL S. BOWERS , JR.;  BOWERS LAW OFFICE LLC
POB 50549 COLUMBIA, SC 29250; butch@butchbowers.com; ROBERT C. STEPHENS, 116 W. JONES
STREET RALEIGH, NC 27699; bob.stephens@nc.gov;  WILLIAM WOODLEY STEWART , JR., 1101
HAYNES ST., STE. 104 RALEIGH, NC 27604, bstewart@mgsattorneys.com; BRENNAN TYLER BROOKS,
1101 HAYNES ST., STE. 104 RALEIGH, NC 27604; tbrooks@mgsattorneys.com; FRANK J. GORDON, 1101
HAYNES ST., STE. 104 RALEIGH, NC 27604,  fgordon@mgsattorneys.com; ROBERT N. DRISCOLL, 1275
PENNSYLVANIA AVE., NW, STE. 420 WASHINGTON, DC 20004; rdriscoll@mcglinchey.com; AMAR
MAJMUNDAR, POB 629 RALEIGH, NC 27602-0629, amajmundar@ncdoj.gov; OLGA E. VYSOTSKAYA DE
BRITO, POST OFFICE BOX 629 RALEIGH, NC 27602; ovysotskaya@ncdoj.gov; CAROLYN C. PRATT, POB
2688 CHAPEL HILL, NC 27517-2688; ccpratt@northcarolina.edu; GLEN D. NAGER, 51 LOUISIANA AVE.,
N.W. WASHINGTON, DC 20001; gdnager@jonesday.com; JAMES M. BURNHAM; 51 LOUISIANA AVE.,

N.W. WASHINGTON, DC 20001; jmburnham@jonesday.com; NOEL J. FRANCISCO, 51 LOUISIANA AVE., N.W. WASHINGTON, DC 20001; njfrancisco@jonesday.com; STUART K. DUNCAN; 1717 K ST., NW, STE. 900 WASHINGTON, DC 20006; KDuncan@Schaerr-Duncan.com; GENE C. SCHAERR, 1717 K ST., NW, STE. 900 WASHINGTON, DC 20006; GSchaerr@Schaerr-Duncan.com; ROBERT D. POTTER , JR.; 5821 FAIRVIEW RD., STE. 207 CHARLOTTE, NC 28209; rdpotter@bellsouth.net; DAVID A. CORTMAN, 1000 HURRICANE SHOALS ROAD, D-1100 LAWRENCEVILLE, GA 30043; dcortman@alliancedefendingfreedom.org; DEBORAH J. DEWART, 620 E. SABISTON DRIVE SWANSBORO, NC 28584-9674; debcpalaw@earthlink.net; JAMES A. CAMPBELL; 15100 N. 90TH ST. SCOTTSDALE, AZ 85260; jcampbell@ADFlegal.org; JEREMY D. TEDESCO; 15100 N. 90TH ST. SCOTTSDALE, AZ 85260; jtedesco@telladf.org; JOHN MATTHEW SHARP; 1000 HURRICANE SHOALS RD., NE, STE. D-1100 LAWRENCEVILLE, GA 30043; msharp@adflegal.org; JONATHAN CALEB DALTON; 15100 N. 90TH ST. SCOTTSDALE, AZ 85260; cdalton@ADFlegal.org; JOSEPH E. LARUE, 15100 N. 90TH ST. SCOTTSDALE, AZ 85260; jlarue@ADFlegal.org;

/s/Chris Sevier/

/s/Elizabeth Ording/