# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:16-CV-00425-TDS-JEP |
| STATE OF NORTH CAROLINA; PATRICK MCCRORY, in his official capacity as Governor of North Carolina; NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY; UNIVERSITY OF NORTH CAROLINA; and BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## UNITED STATES' STATEMENT REGARDING ITS PENDING MOTION FOR PRELIMINARY INJUNCTION

The Court has asked the parties to state their positions on whether the Court should rule on Plaintiff United States of America's pending motion for preliminary injunctive relief barring implementation and enforcement of North Carolina House Bill 2 ("H.B. 2") in light of the Supreme Court's grant of *certiorari* in *Gloucester Cnty. Bd. of Educ. v. G.G.*, No. 16-273. The questions the Supreme Court granted *certiorari* to address are: (1) whether a particular letter reflecting federal agency guidance interpreting Title IX and its regulations to require that sex-segregated facilities be accessible to people consistent with their gender identity is entitled to deference under *Auer v. Robbins*, 519

U.S. 452 (1997); and (2) whether, with or without deference, the United States' interpretation of Title IX and its regulations is correct.

The United States respectfully requests that the Court rule on the pending motion, which has been fully briefed since September 16, 2016, and grant it. The Court should preserve the pre-controversy status quo while the Supreme Court considers legal issues similar to some of the claims raised in this case and this Court adjudicates claims for final relief. The question before this Court is not whether the Supreme Court's decision in *G.G.* will affect one of the claims in this case but, rather, what should happen to H.B. 2 while that question is being resolved.

There is no dispute that prior to H.B. 2, transgender people in North Carolina were not prohibited from using bathrooms and changing facilities consistent with their gender identity. Defendants have produced no record of actual harm in North Carolina resulting from this state of affairs that H.B. 2 was needed to address, as this Court found in partially granting private plaintiffs' motion for preliminary injunction.[1] The University of North Carolina, one of the largest state institutions in North Carolina, professes an aversion to enforcing H.B. 2 and has suggested its enforcement would be bad for its campus community.[2] Whatever the Defendants' interests in preserving H.B. 2 are, there

---

[1] *See Carcaño v. McCrory*, No. 1:16-cv-236, Memorandum Opinion, ECF No. 127 (Aug. 26, 2016) (hereinafter "*Carcaño* Opinion") at 78 ("[T]he court has no reason to believe that an injunction returning to the state of affairs as it existed before March 2016 would pose a privacy or safety risk for North Carolinians, transgender or otherwise."). *See also* United States Reply Memorandum in Support of Motion for Preliminary Injunction (Sept. 16, 2016), ECF No. 177 at 27-30.

[2] *See, e.g.*, *President Spellings Comments on Public Facilities Privacy and Security Act (HB2)* (Apr. 11, 2016), ECF No. 46-8 ("We have heard from students, faculty, and staff who see HB2

is no reason to believe those interests will be meaningfully impaired by a temporary halt to implementation and enforcement. And there is no reason to believe that any harm will befall any person if North Carolina is restored to the pre-H.B. 2 status quo.

It is clear, by contrast, that transgender people are being harmed by the enforcement of H.B. 2. Transgender North Carolinians reported to the Court, in their own words, the pain and humiliation they are suffering because of H.B. 2, as well as the health consequences they risk by avoiding bathroom use on campus or at work.[3] Medical experts with extensive experience counseling transgender people and studying and treating gender dysphoria explained how the ability to use facilities consistent with one's gender identity is critical to one's sense of self, to one's core identity—a notion that non-transgender people take for granted—and how, by purporting to classify transgender women as men and transgender men as women unless they have been able to change their birth certificates, H.B. 2 perpetuates stigma and increases the risk of harassment,

---

as an effort to single out individuals based on their sexual orientation or gender identity for ridicule or harassment. They are hurt, angry, and even afraid. It is apparent that our providing factual guidance on the requirements of the law has been misinterpreted as an endorsement of the law. Nothing could be further from the truth. . . . I have contacted state leaders and advised them that this law is sending a chill throughout the University of North Carolina."); UNC Memorandum in Support of Motion to Dismiss (July 18, 2016), ECF No. 99 at 1 ("[T]he University's President has declared that the Act has no enforcement provisions and that she has no intent to take any action to enforce it."); Transcript of Hearing (Aug. 1, 2016), ECF No. 103 at 99:21 ("H.B. 2 is not the policy of the University of North Carolina . . .").

[3] *See* Declaration of Stephanie Paige Dula, ECF No. 76-32, ¶¶ 9-11, 13; Declaration of Alaina Kupec, ECF No. 76-34, ¶¶ 7, 9, 10, 13, 14; Declaration of C.W., ECF No. 76-39, ¶¶ 12-22, 25-26; Declaration of A.T., ECF No. 76-40, ¶¶ 10-17, 22-25; Declaration of A.N., ECF No. 76-41, ¶ 19, 23-25; Declaration of D.B., ECF No. 76-44, ¶¶ 14-16; Declaration of H.K., ECF No. 76-45, ¶¶ 10-13, 18-20.

isolation, psychological harm, and suicide.[4]  H.B. 2 codifies harmful discrimination into state law, sending the signal to transgender North Carolinians that their government does not respect their identity and removing any possibility of a public agency determining that a gender-affirming policy (or the absence of a policy) is more appropriate for its situation or its clientele.  Every day in North Carolina, transgender people who seek out bathrooms or changing facilities in public buildings, schools, and places of public employment must choose between violating the law—risking arrest and harassment empowered by the force of law—or sacrificing their identity and entering a facility meant for people of the opposite sex.

The grant of *certiorari* in *G.G.* does not alter the United States' likelihood of success on the merits sufficiently to warrant inaction on or denial of the motion for preliminary injunction.  As this Court has already noted, the Fourth Circuit's decision in *G.G.* remains binding on this Court unless the Supreme Court issues a decision to the contrary.  *Carcaño* Opinion at 41.  The outcome of *G.G.* in the Supreme Court is unknown.  The Court may affirm the Fourth Circuit's ruling on the deference owed to federal agency interpretation of Title IX and its regulations.  It may affirm on other grounds by agreeing with the United States' interpretation of the statute and regulations, regardless of deference.  It may reverse the Fourth Circuit's ruling on deference and not reach the second question presented.  Any of these outcomes would leave intact the United States' claim that it is likely to succeed on the merits in this case.  Or, the

---

[4] *See* Declaration of George Brown, ECF No. 76-35 ¶¶ 45, 56-58; Declaration of Lin Fraser, ECF No. 76-36, ¶¶ 24-27, 32-37; Declaration of Scott Leibowitz, ECF No. 76-37, ¶¶ 23-25, 27-32.

4

Supreme Court could adopt the Defendants' view of Title IX. Calculating the relative probability of these outcomes is beyond the power of any party to this litigation. The impact of any of these outcomes on the United States' Title VII claim is more speculative still. For this reason, the Court should continue to assess the likelihood of success on the merits based on what the law is now, and not rule or forego ruling based on guesswork about what the law may be several months from now.

Even if the Court were inclined to withhold preliminary relief based on speculation about the effect of a future Supreme Court ruling, which it should not do, the Court should still, at a minimum, adjudicate the United States' claim for preliminary relief based on the Violence Against Women Act, 42 U.S.C. § 13925(b)(13) ("VAWA"). A claim under VAWA will not be implicated by the Supreme Court's resolution of the questions presented in *G.G.* under any scenario because VAWA explicitly prohibits discrimination based on gender identity, and thus turns neither on the deference owed to federal agency interpretation of Title IX nor on the meaning of the statutory prohibition against being "subjected to discrimination" "on the basis of sex."

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court rule on, and grant, the United States' motion for preliminary injunction.


Respectfully submitted, this 21st day of November, 2016.

RIPLEY RAND  VANITA GUPTA
United States Attorney  Principal Deputy Assistant Attorney

5

Middle District of North Carolina
United States Department of Justice
101 South Edgeworth Street, 4th Floor
Greensboro, NC 27401
Telephone: (336) 333-5351
E-mail: ripley.rand@usdoj.gov

General, Civil Rights Division

SHAHEENA SIMONS
Chief, Educational Opportunities Section

DELORA L. KENNEBREW
Chief, Employment Litigation Section

CHRISTINE STONEMAN
Principal Deputy Section Chief, Federal
Coordination and Compliance Section

COREY L. STOUGHTON
Senior Counsel

LORI B. KISCH
WHITNEY PELLEGRINO
Special Litigation Counsel

TOREY B. CUMMINGS
DYLAN N. DE KERVOR
ALYSSA C. LAREAU
CAMILLE MONAHAN
JONATHAN D. NEWTON
CANDYCE PHOENIX
ARIA S. VAUGHAN
TARYN WILGUS NULL
Trial Attorneys
United States Department of Justice
Civil Rights Division

/s/ Aria S. Vaughan
Aria S. Vaughan
NY Bar Number: 5044748
Trial Attorney
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-4092
Aria.Vaughan@usdoj.gov

*Counsel for Plaintiff United States*

## CERTIFICATE OF SERVICE

I certify that on November 21, 2016, I electronically filed the United States' Statement Regarding Pending Preliminary Injunction Motion with the Clerk of the Court using the CM/ECF system, and have verified that such filing was sent electronically using the CM/ECF system to all parties who have appeared with an email address of record and mailed to the following non-CM/ECF participant:

Elizabeth Ording
219 S. Limestone
Lexington, KY 40508

/s/ Aria S. Vaughan
Aria S. Vaughan