```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV425 |
| | ) | |
| STATE OF NORTH CAROLINA, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM ORDER

Before the court is a motion to intervene in this constitutional and statutory challenge to portions of North Carolina's Public Facilities Privacy & Security Act, 2016 N.C. Sess. Laws 3, commonly known as House Bill 2 ("HB2"). (Doc. 130.) Chris Sevier and Elizabeth Ording (the "proposed intervenors") are "soon-to-be employee[s] of the University of North Carolina" and a self-identified "machinist" and "Zoophile," respectively. (Doc. 131 at 11.) They seek intervention as of right pursuant to Federal Rule of Civil Procedure 24(a), or, in the alternative, permissively pursuant to Rule 24(b). The United States and University of North Carolina ("UNC")-related Defendants oppose the motion. (Docs. 158, 169.) For the reasons set forth below, the motion will be denied.

I.  **BACKGROUND**

The North Carolina General Assembly passed HB2 on March 23, 2016, and Governor Patrick L. McCrory signed the bill into law

later that day.  2016 N.C. Sess. Laws 3.  Among other things, HB2 states that multiple occupancy bathrooms and changing facilities, including those managed by local boards of education, must be "designated for and only used by persons based on their biological sex."  Id.  The law also sets statewide nondiscrimination standards, preempting local and municipal ordinances that conflict with these standards.  Id.

Almost immediately, HB2 sparked multiple overlapping federal lawsuits.  On March 28, 2016, the American Civil Liberties Union of North Carolina, Equality North Carolina, and several individual plaintiffs filed an action, designated number 1:16cv236, alleging that HB2 discriminates against transgender, gay, lesbian, and bisexual individuals on the basis of sex, sexual orientation, and transgender status in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"), as well as the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution.

On May 9, 2016, the United States filed the present lawsuit in this court against the State, Governor McCrory (in his official capacity), the North Carolina Department of Public Safety, the University of North Carolina, and the University of North Carolina Board of Governors, seeking a declaration that compliance with HB2's provisions relating to multiple-occupancy bathrooms and changing facilities constitutes sex discrimination in violation of

Title IX, the Violence Against Women Reauthorization Act of 2013, 42 U.S.C. § 13925(b)(13), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and requesting an injunction against enforcement of the law. (Doc. 1 in case no. 1:16CV425.)[1]

On August 26, 2016, following briefing and a full hearing, this court entered a memorandum opinion, order, and preliminary injunction in favor of the individual plaintiffs in case 1:16cv236. (Doc. 127 in 1:16cv236.) In the present case, the United States filed a motion for preliminary injunction (Doc. 73), which has since been fully briefed. Shortly thereafter, the Supreme Court granted the petition for writ of certiorari in G.G. v. Gloucester County School Board, 822 F.3d 709 (4th Cir. 2016), cert. granted in part, 2016 WL 4565643 (U.S. Oct. 28, 2016) (No. 16-273), a case the parties acknowledge significantly affects the analysis of the issues before the court. Consequently, the parties in the present cases have sought a stay of all further proceedings (except the United States wishes to have its motion for preliminary injunction decided), pending the disposition of G.G. (Doc. 221.)

Sevier and Ording filed their motion to intervene on August 11, 2016. (Doc. 130.) They summarize their claim as follows:

If the Federal Government is going to potentially codify

---

[1] That same day, State officials filed two separate declaratory judgment actions in the Eastern District of North Carolina. Those actions have been dismissed now that the interested parties in those cases have been permitted to intervene in the present actions. Another action brought by North Carolinians for Privacy, civil action 1:16cv845, has been voluntarily dismissed. (Doc. 63 in case 1:16cv845.)

3

> prospective "non-realities" of a religious orthodoxy concerning "sexual orientation," it must legally codify the other denominations unproven faith based assumptions and identify narrative within the same religious orthodoxy as well. Allowing the Plaintiff to intervene will keep the Court, the original plaintiff, and the defendants from having the wrong conversation under the Constitution, which was the fundamental error that took place in Obergefell [v. Hodges, 135 S. Ct. 2584 (2015)] and [United States v.] Windsor[, 133 S. C.t 2675 (2013)].

(Doc. 121 at 11.)

## II. ANALYSIS

The proposed intervenors seek to intervene nominally as Plaintiffs in this case pursuant to Federal Rule of Civil Procedure 24(a) and (b), although their arguments indicate they may actually support the law. (See Doc. 131 at 17 n.16 ("The state has a compelling interest to pass HB2 and legally nullify gay marriage so that it is not promoting obscenity in action.").) Of the parties who have filed a response, all uniformly oppose the motion.

"Under Rule 24(a)(2), a district court must permit intervention as a matter of right if the movant can demonstrate '(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation.'" Stuart v. Huff, 706 F.3d 345, 349 (4th Cir. 2013) (quoting Teague v. Bakker, 931 F.2d 259, 260-61 (4th Cir. 1991)). All of these criteria must be met. Va. v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th

4

Cir. 1976) (denying intervention where intervenor's interests were adequately represented by plaintiffs). When a State statute is challenged and a proposed intervenor shares a common objective with the State to defend the validity of the statute, the proposed intervenor "must mount a strong showing of inadequacy" to be entitled to intervention of right. Stuart, 706 F.3d at 352. This is so because, as the Fourth Circuit has explained, "when a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government." Id. at 351. To rebut the presumption of adequacy, the proposed intervenors must show collusion between the existing parties, adversity of interests between themselves and the Defendants, or nonfeasance on the part of the Defendants. See id. at 350, 352–55.

Under Rule 24(b) the court may permit anyone who "has a claim or defense that shares with the main action a common question of law or fact" to intervene on timely motion. Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Thus, where a movant seeks permissive intervention, the movant must satisfy three requirements: (1) the motion is timely; (2) the existence of a shared question of law or fact in common with the main action; and (3) no undue delay or prejudice to the existing parties will result from the intervention. See

Wright v. Krispy Kreme Doughnuts, Inc., 231 F.R.D. 475, 479 (M.D.N.C. 2005); Solo Cup Operating Corp. v. GGCY Energy LLC, Civil No. WDQ-12-3194, 2013 WL 2151503, at *2 (D. Md. May 15, 2013); Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co. Inc., 223 F.R.D. 386, 387 (D. Md. 2004). Trial courts are directed to construe Rule 24 liberally to allow intervention, where appropriate. Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986) (noting that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process" (citation and internal quotation marks omitted)); Capacchione v. Charlotte-Mecklenburg Bd. of Educ., 179 F.R.D. 505, 507 (W.D.N.C. 1998) (same). Ultimately, the decision rests wholly in the trial court's proper exercise of discretion. Wright, 231 F.R.D. at 479.

Here, the proposed intervenors fail to satisfy the standards under either rule. Their contemplated pleading raises factual allegations and legal arguments they claim arise out of the passage of HB2 and its application, but it is readily apparent that their interests are far from that. The proposed intervenors seek to intervene to press their claim that "laws and policies that legally codify 'gay marriage,' 'gay rights,' and 'transgender rights' violate the first amendment establishment clause" (Doc. 131 at 12) under their contention that, "[l]ike transgenders, both intervening Plaintiffs are members of the true minority in the

6

church of western postmodern expressive individual relativism and the non-obvious class of sexual orientation, only they are in different but equal sects" (id. at 11 n.1.) They claim that "[h]omosexuality, transgenderism, polygamy, zoophilia, and machinism are merely sects of the same religion" that must be treated equally. (Id. at 13.) They argue that they have suffered injury because they "went to UNC and tried to use bathrooms and locker rooms that were designed for machinists and zoophiles but there were not any." (Id. at 16.) As a result, one of the remedies they seek is to ensure that "zoophiles, machinists, and polygamists employees [sic] of UNC . . . have the same civil and employment rights as individuals who self-identify as transgenders." (Id. at 13.)

These claims not only fail to bear a "close relationship to the dispute between the existing litigants." Dairy Maid Dairy, Inc. v. United States, 147 F.R.D. 109, 111 (E.D. Va. 1993). They are irrelevant to the litigation before the court and seek to press new rights not presently raised in the legislation at issue. United States v. Lehigh Valley Co-op Farmers, Inc., 294 F. Supp. 2d 140 144 (E.D. Pa. 1968). In any event, even if the proposed intervenors merely wish to align themselves with one side or the other in this litigation, they have not demonstrated that any legitimate interest they may have in that regard is not already adequately represented by the existing parties.

7

Further, the addition of the proposed intervenors would surely cause undue delay and prejudice to the original parties in this case. Proposed intervenors' filings reveal that they seek to use this litigation to collaterally attack the United States Supreme Court's decisions in Obergefell v. Hodges, 135 S. Ct. 2584 (2015), and United States v. Windsor, 133 S. C.t 2675 (2013). Proposed intervenors claim that permitting their involvement "will keep the Court, the original plaintiff, and the defendants from having the wrong conversation under the Constitution, which was the fundamental error that took place in Obergefell and Windsor." (Doc. 131 at 11.) In essence, proposed intervenors maintain that recognizing gay and transgender rights is tantamount to the establishment of a national religion that violates the Constitution. (Id. at 12-13.) Permitting intervention is likely to significantly complicate the proceedings and unduly expand the scope of discovery in this case, without garnering any ostensible corresponding benefit to the existing parties. Stuart, 706 F.3d at 355 (affirming denial of intervention where it "would necessarily complicate the discovery process and consume additional resources of the court and the parties" without accruing any benefit to the existing parties).

For these reasons, the motion to intervene, both as of right and permissively, will therefore be denied.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that the motion of Chris Sevier and Elizabeth Ording to intervene (Doc. 130) is DENIED.

                                          /s/ Thomas D. Schroeder
                                       United States District Judge

December 16, 2016